## CAMPBELL & CARPENTER vs. WESTERN and others.

A mistake of judgment in arbitrators is not sufficient evidence of improper conduct on their part to justify the setting aside of their award, in a court of chancery.

An arbitrator cannot contradict an award which he has signed.

It is not necessary that all the arbitrators should concur in the decision of every question which arises, during the hearing, as to the admissibility of evidence; it is sufficient if all actually hear the cause and join in the award which is finally made.

Where the subject matter of a suit is in relation to a bond or contract in which there are joint obligors, all the obligors ought to be made parties.

February 21. THIS was an appeal from the decision of the late vice chancellor of the first circuit, dismissing the complainants' bill against the defendants, respectively, with costs. The facts appearing upon the pleadings and proofs, so far as they are material to

1832.

Campbell
v.
Western.

the decision of the questions arising on this appeal, were as follows : The defendant Depew had recovered a judgment against Emerald Wheeler, in the marine court of New-York ; upon which an execution was delivered to the marshal, who levied the same upon a quantity of apples lying upon the side walk, in front of the complainants' store. The apples were claimed by the complainants, as their property, but the marshal refused to give them up ; whereupon they brought an action of replevin. They neglected to proceed in that suit, and were either nonsuited or nonprossed therein. An action was thereupon brought in the superior court, on the replevin bond, in the name of Lowndes, the sheriff, to whom it was given, but for the benefit of Depew, who was a defendant in the replevin suit. The complainants then brought an action of trespass against Depew in the supreme court. In this state of the business, the complainants in the present suit proposed to Depew to submit the question to referees. The parties thereupon entered into a written agreement in the suit pending on the replevin bond, to submit the question to S. T. Williams, A. M. Valentine and G. Ostrander, whether the apples belonged to the complainants or to Wheeler, at the time the execution was levied on them. And it was agreed that if the referees decided that the apples belonged to the complainants, then both suits were to be discontinued, without costs on either side, and the parties were to execute mutual releases. But if the referees found the title to have been in Wheeler, then they were to make a report, for the sum of $119,07, in the suit on the replevin bond ; for which sum a judgment was to be entered in that suit, against the complainants and their bail, together with the costs of the suit, and the costs of the reference. The complainants and their bail also signed a relicta and cognovit for that sum, and released all errors in the proceedings and in the judgment which was to be entered thereon, and placed it in the hands of the attorney for the plaintiff in that suit, to be used if the decision of the referees should be against the title of the complainants. The attornies for the parties, by direction of their clients, signed a stipulation that the agreement or submission should be made a rule of court. This stipulation was thereupon filed, and a rule was entered in the superior court

as a common rule, in the usual form of rules on reference by consent. The matter was thereupon heard before the referees, who made a report in writing, signed by them all, by which they found and decided that the title of the apples at the time of the levy was in E. Wheeler ; and they reported the amount due in the replevin suit according to the agreement. Whereupon the plaintiffs' attorney filed the report and cognovit, and entered up judgment thereon according to the stipulation. The complainants applied to set aside the report, on the ground that the referees had improperly excluded the testimony of Wheeler as an interested witness. But the superior court decided that the reference was in the nature of an arbitration, and denied the application. The bill in this cause was thereupon filed to restrain the proceedings under the decision of the referees, and under the judgment.

*T. C. Pinckney & W. Silliman,* for complainants. There has been no reference in this cause pursuant to the statute, and therefore no valid report under the statute. Where a cause is referred by consent, without a rule of court, or where the parties, by rule entered by consent, refer a cause not within the statute, the court will not interfere in setting aside the proceedings. But the parties are left to the same remedy as in the case of a mere submission to arbitrators, (1 *Dunlap's Pr.* 540 ; 1 *John. Rep.* 315, 492 ; 17 *John. Rep.* 129 :) that is, in a court of equity. Neither of the causes between the parties were referrible under the statute. The case in the supreme court was an action of trespass, and the one in the superior court was an action of debt upon a replevin bond. The reference by the mere act of the parties, and without the intervention of the court, was a discontinuance of the suits, and the judgment entered on the report of the referees in the superior court, was therefore erroneous and void. (18 *John. R.* 22.) The cases referred not being within the statute, the consent of parties would not confer jurisdiction. (18 *John. R.* 22.) The superior court having no power to review the proceedings, or grant any relief in the premises, fully justified the interference of this court by injunction, staying all proceedings on the judgment in that court. (7 *Cranch,* 332,

336.) Courts of equity will always restrain the enforcement of judgments at law, obtained against conscience. (7 *Cranch,* 332, 336.) There has been no arbitration, and therefore no valid award; but the whole proceedings are founded in mistake, and are void.

Chancery always looks to the intention of the parties. If, then, they intended a reference under the statute, and under the power and control of the court, they did not intend an arbitration. The term arbitrator, or arbitration, is no where used. It is called a reference in every paper, and the persons appointed, referees. The intention of the parties is important in this respect; if a reference under the statute was intended, the parties and referees no doubt supposed the court could, and would rectify any error they might commit; whereas if a mere arbitration was intended, or understood, they could have had no such supposition, but considered the arbitrators the judges of the law and the fact, and their decision binding and conclusive in the premises, whether right or wrong. No court has ever yet said that the reference of a cause, intended to be pursuant to the statute, failing to be so, becomes an arbitration. All they have ever said is, that the parties are left to the same remedy as in the case of a mere submission to arbitrators. (1 *Dunlap's Practice, and cases there cited.*) If it was a mere arbitration, the defendants had no right to enter judgment and take out execution in the superior court; their only course was by action upon the report, treating it as an award. " An award of arbitrators, appointed under a mutual mistake of both parties, in supposing themselves bound by law to submit the matter in dispute to arbitration, is not obligatory." (*Peisch* v. *Ware,* 4 *Cranch,* 347, 366.) Equity relieves against mistakes, either of fact or of law merely. (*Hunt* v. *Rousmanure's Admr.* 8 *Wheat.* 211.)

The parties have been mistaken in regard to the tribunal; they having agreed to the ordinary reference under the statute, and tried their cause before persons whom the defendants now, for the first time, call arbitrators. It is presumed this court will go as far in this case as a court of law would in respect to an award of arbitrators, where the submission

is made a rule of court. There are numerous authorities in *Peake's Evidence, by Norris,* 118, *note,* speaking as strong language as this. The same cause which will induce a court to set aside a verdict will govern in the case of awards ; and therefore, if it appear that there has been manifest injustice, or a plain and clear mistake, either in law or in fact, the report will be set aside.

The referees have been mistaken in regard to the effect of their report, for it was intended that the question as to the admissibility of Wheeler should be submitted to the court. This is fully proved by the testimony. Williams swears he dissented from the other referees in rejecting Wheeler, and did not yield or change his opinion. Could a less number than the whole make a decision ? There was no provision that the decision of a less number than the whole should be binding in any respect. The rule of reference was mistaken ; it was not warranted by the consent. There was no agreement that the decision of a less number than the whole should be binding ; whereas Mr. Western entered the ordinary rule of reference under the statute, "that they, or any two of them," &c. This tended to mislead the referees, and induced them to believe the decision of a less number than the whole was binding, in the rejection of Wheeler, and in signing the report. The referees decided against the weight of evidence before them, which proved the property to be in the complainants, and contrary to law, in excluding the testimony of Wheeler, and in admitting incompetent witnesses. And they have misbehaved in regard to the matters referred, and their report is therefore void.

Wheeler was not a party to the suit, nor in any way interested in the event. He was the complainants' agent, and was competent to testify. An agent may even prove his own agency, and any facts within the scope of his agency. (1 *Phil .Ev.* 79.) Every agent is a competent witness, ex necessitate. (1 *John. Cas.* 270, 408. 2 *id.* 60. 3 *id.* 39. 5 *John. Rep.* 256.) A factor who was to have poundage, according to the amount of the sale, was held a good witness to prove the contract, in an action by his principal. (*Dixon* v. *Cooper,* 3 *Wilson,* 40.) And in like manner, a factor who was to have all above a

certain sum, was admitted to prove a contract above that sum. (2 *H. Black.* 590.) The refusal of the referees to hear the testimony of Wheeler, was such misconduct as vitiated their report, and for which it ought to be set aside in equity. . (*Van Cortlandt and others v. A. J. & J. Underhill,* 17 *John. Rep.* 405, *in error. id.* 419, *per Spencer, J.*) If the arbitrators refuse to hear evidence pertinent and material to the matter in controversy, it is unquestionably such misconduct as will vitiate an award in a court of equity. (*Idem.* 411.) Arbitrators proceeding contrary to the principles of natural justice, though there be no corruption, as if without reason they will not hear a witness, are good causes for setting aside an award. Partiality is also a ground for setting aside an award. (17 *John. R.* 405. 2 *John. Ch. Rep.* 339.)

It has been said on the part of the defendants, that Williams being one of the referees, was an incompetent witness in this suit. This is not so; for the case of *Van Cortlandt v. Underhill,* (17 *John.* 405,) turned wholly upon the testimony of Anderson, one of the arbitrators. In the first instance he was made a party to the suit, but afterwards struck out, for the purpose of being made a witness. Allen, senator, says, in that case, (17 *John.* 421,) "The competency of this witness has been admitted; but his credibility is sought to be impeached, principally on the ground of his having signed the award, and declared it be according to his best judgment and belief." The complainants have suffered by the rejection of Wheeler as a witness, on whose testimony the whole merits of the cause rested. Wheeler being the agent, was doubtless cognizant of the whole transaction, and able to give the most positive and conclusive testimony upon the subject. And if the referees had any doubt, he probably would have removed it. His total rejection is a strong circumstance to prove bias upon their minds. The testimony adduced before he was offered did not establish his interest. The verdict could not be evidence in any suit against him, not being a party to the record; nor could it fix any liability upon him. We offered him to prove that the property was not his; which would leave him still exposed

1832.

Campbell
v.
Western.

to the execution. A witness is always competent to swear against his own interest ; or when his interest is neutralized. It is absurd to say a release from us would have bettered his situation ; for he either stood neutralized as to interest, or he was offered to prove facts against his own interest. A release from us could not have prevented Depew's execution still existing against him. If we had released him, the opposing counsel would doubtless have taken that ground.

The defendant Western professes to have acted as attorney merely ; but he used the report and relicta deposited with him, improperly. As to the latter, he was manifestly a trustee in some manner for the complainants, and without their further authority could not rightfully use it. There was much more reason for making Western a party than the arbitrators in the case of *Underhill* v. *Van Cortlandt*, (17 *John. Rep.* 405.) Western was the prime mover of all, from the beginning to the end. His client Depew was a nonresident. He drew all the papers. The relicta was left in his hands. The report of the referees was handed to him. He filed it, entered judgment upon it, issued execution thereon, and levied upon the complainant's property. He also deluded the referees, and objected to the superior court's passing upon the question as to the admissibility of Wheeler. And he was proceeding to dispossess the complainants of more property, when he was arrested by the injunction of this honorable court. His interest, as to costs, far exceeded the interest of his client from the amount in controversy. In a word, he is an accessory to all the errors and mistakes in the whole proceedings. He was the active instrument or agent of a person who, in all probability, was ignorant of the course, nature and effect of all the proceedings. He had the management and control of the whole matter. Western should not, if improperly made a party, be allowed costs of his answer, because he ought to have demurred. (*See Executors of Gallager* v. *Roberts*, 1 *Wash. C. C. Rep.* 320.)

Lowndes was properly made a party. He was the plaintiff in the suit on the replevin bond in the superior court, and his name was used in all the proceedings on the reference. The

judgment on the report of the referees was entered in his name, by Western. Hoyt ought not to have been permitted to testify before the referees; because, by securing a verdict against the complainants he would screen himself from being prosecuted for the trespass. It was improper for Ostrander to hold ex parte communications with Depew on the subject and nature of the controversy. This is decided in the case of *Underhill* v. *Van Cortlandt,* (17 *John. Rep.* 405.)

*J. Radcliff,* for the defendant. The reference or submission to the referees having been made by the written consent of both parties, which authorized judgment to be entered against either party according to the determination of the referees, accompanied with a formal relicta and cognovit, signed by all the defendants, and also by their attorney in the action of replevin, was binding and conclusive upon them; and no court will interfere therewith, unless mal or corrupt conduct, in the referees, is shewn. There is no pretence or foundation for any charge of this kind against the referees. The authorities upon the subject are conclusive to show their decision is final. The cases cited by the opposite party go fully to support this point. The case of *Miller* v. *Vaughan,* (1 *John. R.* 314,) had been referred by consent of parties without any rule of court. The court there say that they will interpose only where the cause has been referred by a rule of court pursuant to the statute. That in other cases of reference of causes by consent, the parties must be left to their remedy as in case of an arbitration. This decision is not against us, for here the reference was not only made by consent of parties, but by a rule of court founded on an agreement in writing, by which judgment was to be entered according to the report of the referees. And a relicta, for that purpose, containing a release of errors, was also given. In *Stevenson* v *Becker,* cited also on the other side, a motion was made for judgment as in case of nonsuit on a report of referees. That was not a case within the act. And the parties submitted the cause, by consent, to referees and agreed that their report should be con-

clusive; and that if the referees decided in favor of the defendant, he should be entitled to a judgment of nonsuit. The court there held that the case came within the reason of the decision of *Miller* v. *Vaughan*, and that the parties having agreed that the report should be conclusive, they must abide by it, and the court therefore granted a judgment of nonsuit. This case is decisive of the present. We ask no more than that the parties shall abide by their agreement, and the confession of judgment they have given. The next case cited by the complainants is that of *Johnson* v. *Parmely*, (17 *John. R.* 129.) That was a case not referrible under the statute; but by consent a rule of reference had been entered, in the clerk's office, referring the cause to referees. A motion was made to set aside the report of the referees. The court refused to exercise any control over the proceedings, regarding the submission as a mere arbitration; and they denied the motion with costs. There was in that case no consent or agreement that judgment should be entered according to the report, nor any relicta given as in the present case; and therefore it has no application. The next case cited by the complainants is that of *Camp* v. *Root*, (18 *John. R.* 22.) That was an action of replevin, referred by consent generally. The court say it is plainly a case of submission to arbitration, and in no respect within the statute, &c. But they refer to the case of *Yates* v. *Russel*, in the court of errors, (17 *John. R.* 461,) in which it was stipulated by the defendant's attorney that if the referees reported against him, judgment should be entered according to the report, and that was considered equivalent to a plea of confession for the amount reported due. But the court said that in the case before them there was no such stipulation, and therefore they considered it as the case of an arbitration and award merely. In the case now to be decided there was not only an agreement that judgment should be entered, but also a plea of confession with a release of errors was given, signed by all the defendants, and also by their attorney, making a case much stronger than the one in the court of errors. In the case of *Dodge* v. *Waterbury*, (8 *Cowen*, 136,) the reference was to two referees, with power to choose an umpire,

The court considered it not within the statute, and an arbitration only.

The plain distinction established by these cases is, that when the parties agree, in a case not referrible under the statute, to refer the same to referees generally, without providing that judgment shall be entered according to the report, it will be regarded as a mere arbitration ; but if there be a stipulation that judgment be entered up according to the report, the court will allow it to be done.    The cases on this subject, (to show the conclusive effect of such award,) both ancient and modern, at law and in equity, in England as well as in this country, are collected by Chancellor Kent in the case of *Underhill* v. *Van Cortlandt*, (2 *John. Ch. R.* 361 *to* 369.)    Although the decision of Chancellor Kent in that case was afterwards reversed by the court of errors, it was so reversed on a ground inapplicable to the present case.    For nothing short of corruption or partiality on the part of arbitrators or referees, or some fraud practiced by a party, can the report or award be set aside.    No such thing was pretended in the court below to have existed, although it is now insisted upon.    To show with what caution the court will receive imputations of this kind against referees, or arbitrators, the case of *Davy's Executors* v. *Faw*, in the supreme court of the United States, all the judges being present, is referred to.    (7 *Cranch's R.* 174.)    It belonged to the superior court in New-York to set aside the report if it ought to have been done, it being a suit in that court and properly under its cognizance.    An application to set aside the report having in fact been made to the superior court and refused by them, it is res adjudicata ;  and no application can therefore be received here unless new matter is shown.    No such new matter has been shown to warrant the interference of this court.

Wheeler, the witness offered by the complainants before the referees, was properly rejected, he being a party in interest, and combined in the fraud attempted to be practiced on the defendants ;  of which interest the referees were the sole judges.    If it were true that Wheeler was improperly rejected, still it being a question of evidence only, and decided in

good faith by the arbitrators, it cannot be a sufficient ground for setting aside their report or award. It being a matter of opinion only, it cannot be any evidence of misconduct on the part of the arbitrators. The case of *Van Cortlandt* v. *Underhill,* (17 *John. R.* 405,) in error, is not like the present. There the arbitrators refused to hear any evidence on the subject. It was not a question as to the competency of a witness or as to any particular piece of testimony, but a rejection of all evidence on the subject. This, by a majority of the court of errors, was considered to be misconduct on the part of the arbitrators. But there was a difference of opinion in the court even in that case. The expression of Spencer, justice, " If the arbitrators refuse to hear evidence, pertinent and material to the matter in controvsy, it is unquestionably such misconduct as will vitiate an award in a court of equity," does not apply to the present case. There was no refusal to hear evidence on the subject, it being a question as to the competency of a witness only. The farther expression of " arbitrators proceeding contrary to the principles of natural justice, though there be no corruption, as if without reason they will not hear a witness, are good causes for setting aside an award," is equally inapplicable. These arbitrators did not without reason refuse to hear any witness, and they fairly exercised their judgment with regard to the competency of Wheeler.

But Wheeler was in fact, according to the evidence in the cause, an incompetent witness. A case similar in principle to the present occurred in the superior court of New-York, in which a witness was produced and examined in the character of an agent, though objected to. He was an agent for his mother, and was authorized to sign her name to promissory notes and other papers. It appeared from his testimony that he had signed his mother's name as such agent to a promissory note for money, which was the subject of controversy in that cause. The note was made for the purpose of raising money ; and a part of the money so raised was for the use of the witness, and the remainder was applied to the use of the mother. The question as to the competency of the witness was reserved at the trial ; and after-

wards the superior court decided that he was an incompetent witness, he having an interest in the subject matter in controversy.

It was improper to make Western a party, he being merely attorney and counsel in the matter in controversy. As to him the bill ought to be dismissed with costs on the complainants' own shewing. It is idle to pretend that he used the report and relicta improperly. They were used for the very purpose intended, and in no other way.

Simon T. Williams, one of the referees, was an incompetent witness to impeach his own report, on the same ground that jurors are not allowed to impeach their verdict. But referees, like jurors, may give evidence to support their report. This is laid down in the case of *Van Cortlandt* v. *Underhill*, (2 *John. Ch. R.* 349,) in which case Chancellor Kent says, " that it falls within the reason and policy of the rule of law that the affidavit of a juror is not to be received to impeach his verdict, because it would expose jurors to dangerous practices, and to be tampered with by the losing party." The reason of the rule in both cases is equally strong. The bill ought to be dismissed with costs, and the decision of the vice chancellor affirmed.

THE CHANCELLOR. Before I proceed to examine the merits of the bill as between the real parties in interest, it may be proper to notice one or two objections which apply to the defendants Western and Lowndes, exclusively. It is said neither of them were necessary or proper parties, and that the bill as to them was properly dismissed, with costs, whatever might have been the opinion of the court as to the rights of the complainants as against Depew. This objection as to Western is unquestionably well taken. There is nothing in this case to show that he has ever done any thing except as the attorney in the cause, or that he has done any thing more than it was his duty to do as such attorney. If he, in behalf of his client, made use of arguments before the referees or the court which will not bear the test of legal scrutiny, it can form no ground whatever for making him a party here, and subject-

1832.

Campbell
v.
Western.

ing him to the expense of defending a chancery suit. The complainants have proved that they acted under the advice of counsel, throughout. And it is not pretended that such counsel was not as competent to understand and protect their rights as Western was to defend the claims of their adversary. I can conceive no motive for making the attorney a defendant in this case, unless it was to deprive his client of the benefit of his testimony, if it should be needed. The decision of the vice chancellor was therefore correct in dismissing the bill as against him, with costs.

As the judgment was in the name of the sheriff, he was properly made a party to a bill to set it aside, although he might have no personal interest. And if he is subjected to costs in consequence of an improper proceeding being carried on in his name, he must look to the party whom he has permitted thus to use his name for his indemnity. As the judgment on the cognovit is against the bail in the replevin bond, as well as against the complainants, they should also have been parties to the suit; otherwise the defendant Depew may be compelled hereafter to litigate with them the same questions which he is now contesting with their co-obligors in the bond. (*Bailey* v. *Inglee*, 2 *Paige's Rep.* 278.)

The first ground taken by the complainants in this case is, that they acted under a mistake by supposing this was a reference under the statute, and that it was not in the nature of an arbitration. This ground, however, is not sustained by the proof in the cause. The solicitor who drew the bill in this case was their counsel throughout, and swears he advised with them at the time the agreement was made to refer the question of title. And the papers signed by him and his clients at that time, show that he could not have been so ignorant as to suppose this was a simple reference of accounts under the statute. He must have known that the judgment for the defendants in the replevin suit would preclude all inquiry as to the right of property in the suit on the replevin bond, unless the parties prosecuting the last mentioned suit made a special agreement to submit a question to the referees which could not be legally raised on the trial of that cause. The cause stood for argument

1832.

Campbell
v.
Western.

on a demurrer, at the time of the reference. And no lawyer could be so ignorant as to suppose that was a proper case for a reference under the statute, although it might be a proper case for an arbitrator to decide upon. I cannot find a particle of testimony in this case to induce me to suppose that the complainants and their solicitor did not understand what the legal effect of this agreement was, at the time it was entered into, as well as they do now. And in the absence of all proof to the contrary, I must presume neither party was acting under any mistake on that subject. As to the referees, I also presume they decided the question, as to the admissibility of the witness, according to their honest convictions as to what was right and proper. If such was the case, they probably would have made the same decision if they had known that their decision of the question would be final.

If the rule of reference was not in conformity to the agreement, the complainants should not have proceeded under it, but should have applied to set it aside. I cannot see, however, that the variance from the stipulation was at all material, as all the referees actually signed the award. An arbitrator who has signed an award with his co-arbitrators cannot be allowed to contradict this solemn act, and to say that he did not concur in it. The signing of the report was an actual concurrence therein. And arbitrators are not permitted to make mental reservations, in opposition to the written evidence of their decisions, any more than a juror who has concurred in a general verdict would be permitted to swear he was not convinced it was right. I do not understand the rule to go so far as to require that all the arbitrators should concur in the decision of every question which arises, as to the admission or rejection of every piece of evidence, on the hearing of the cause. It is sufficient, if all actually hear the cause and join in the award which is finally made. There was nothing objectionable in relation to the conduct of either of the referees, unless it be an objection that they made a mistake in their judgment upon the law, or the facts, of the case. One of the parties applied to Mr. Ostrander, whom he had seen once or twice only, but with whom he had no particular acquaintance, and asked him if he

1832.

Campbell
v.
Western.

would consent to be an arbitrator in the cause. It was perfectly natural, under such circumstances, that he should enquire as to the general nature of the controversy in relation to which his services were wanted. It is what usually occurs in such cases. And I presume the same explanation took place between the complainants and the arbitrator selected by them, unless he had previously been informed as to the nature of the litigation.

The simple question, therefore, which is presented in this case, as to the validity of the award, must be, whether a mere mistake in judgment of the arbitrators upon a legal question, as to the admissibility of a particular witness, in a case admitting of some doubt, at least, is sufficient evidence of improper conduct in the arbitrators to set aside their award in a court of chancery. If such is the law of this court, then indeed is the right of parties to submit their differences to arbitrators a curse, rather than a blessing. If every party who arbitrates, in relation to a contested claim, to save trouble and expense, is to be subjected to a chancery suit, and to several hundred dollars cost, if the arbitrators happen to err upon a doubtful question as to the admissibility of a witness, the sooner these domestic tribunals of the parties' own selection are abolished the better. Such a principle is wholly inconsistent with common sense, and cannot be the law of a court of equity. There is, therefore, nothing in the proceedings before the arbitrators which could justify any court in setting aside those proceedings for fraud, or improper conduct, or any other irregularity.

If the testimony of Wheeler had been admitted, and he had testified as he has done in this cause, the result probably must have been the same ; as his testimony is wholly inconsistent with that of several other witnesses, and parts of it are inconsistent with the admissions of one of the complainants, as proved by the defendants. I think the balance of the testimony is in favor of the belief that these complainants had indiscreetly permitted Wheeler to use their names to carry on business in such a manner as to keep his property out of the reach of Depew's execution ; and the result to them has been, what generally occurs in such cases, that they have been drawn into this ruinous litigation without any personal benefit ; and

which litigation they have persisted in as indiscreetly as it was originally commenced.

I am satisfied the decree of the vice chancellor in this cause was perfectly correct, and it must be affirmed, with costs.