ROBERT HARTSHORNE, surviving Administrator of HENRY F. SCHENCK, deceased, v. JOHN CUTTRELL.

To impeach an award in equity, there must be corruption, partiality, or gross misbehaviour in the arbitrators, or some palpable mistake made by them in law or fact.

A mistake in the law must be a plain one, and upon some material point affecting the case. A mistake in the fact must in general be such as the arbitrator himself would admit.

An error in judgment on the merits, committed by the arbitrators, or a mistake in the admission or rejection of evidence, not materially affecting the decision, is no ground for the interposition of a court of equity.

If the arbitrators receive the statement of one of the parties as to material facts, without proof, when objection is made by the adverse party, it is an impropriety so gross as to call for the aid of the court.

That the arbitrators after hearing the evidence, and while considering their award, called both the parties before them, and asked one of them questions concerning the case, without the permission or consent of the other, or objection made by him, constitutes no valid objection to the award.

BILL filed March 7th, 1839, to set aside an award. The bill charges, that Henry F. Schenck, the complainant's intestate, in

39

the year eighteen hundred and thirty-six, contracted with the defendant, who was a ship-carpenter, to build a vessel for Schenck, to be finished by the first of March, eighteen hundred and thirty-seven. That the contract was closed by a letter written by Schenck to the defendant, containing directions for the building of the vessel, which letter remains in the possession of Cuttrell, and which is the only memorandum in writing of the contract between the parties. That Schenck paid nine hundred and sixty dollars upon the contract to the defendant, who immediately commenced the building of the vessel. That Schenck died on the sixteenth of January, eighteen hundred and thirty-seven, and that the administration of his estate was thereupon granted to the complainant and James Hopping, esquire, who hath since departed this life. That immediately after the granting of letters of administration, the defendant was informed by Hopping, one of the administrators, with the assent of the complainant, that the administrators could not complete the contract; that they did not wish the building of the vessel continued, and that they would claim the nine hundred and sixty dollars paid upon the contract by Schenck in his life-time. Whereupon the defendant ceased to work upon the vessel under the contract, on account of the administrators, and in the month of March, eighteen hundred and thirty-seven, offered to finish the vessel and sell her on his own account, at the rate of forty-two dollars and fifty cents per ton, to one William Brown, who offered to take the vessel at forty dollars per ton, the price for which she was to be built under the contract with Schenck. That the defendant failed to complete the vessel at the time stipulated in his contract with Schenck, and never tendered her to the administrators, or offered to fulfil his contract, but on the contrary, in the summer of eighteen hundred and thirty-seven, finished and sold the vessel on his own account. That difficulties having arisen between the complainant and defendant in relation to the matter, the complainant claiming that the contract had been rescinded, and that nine hundred and sixty dollars, the whole sum advanced on the contract, should be refunded; and the defendant insisting that

[Adm'r of Schenck v. Cuttrell.]

he had sustained a loss upon the vessel of about two hundred and fifty dollars, which he should be allowed to retain out of the money in his hands—it was agreed by the parties to submit the matter to arbitration. That the parties having entered into bond for that purpose, submitted the matter to the award and arbitrament of John Hopping, Samuel Sproul and Samuel Mairs, whose award, or the award of any two of them, should be final and conclusive; and thereupon the matter was heard before the said arbitrators, on the fifteenth of January, eighteen hundred and thirty-nine. That on the hearing before the arbitrators, the defendant admitted the receipt of the nine hundred and sixty dollars paid him by Schenck, and also notice from the administrators that they would not take the vessel, but claimed seven hundred dollars damages, for his loss sustained in building the vessel. In support of his claim he offered in evidence the aforesaid letter from Schenck to the defendant respecting the building of the vessel, and also offered to prove by Henry Cuttrell, that Schenck agreed by parol, with the witness and the defendant, while they were partners, to build him a vessel at forty dollars per ton, without finishing the cabin, and that the defendant and witness afterwards dissolved partnership; to which evidence the complainant, by his counsel, objected as incompetent and unlawful, but the objection was overruled by the arbitrators and the evidence admitted. That no evidence was offered by the defendant before the arbitrators, that he had given notice to the administrators, or either of them, that he should hold them liable upon the contract, or that he finished the vessel for them, or that he finished the vessel with a cabin, or that he had sustained any loss whatever on said vessel, nor did he offer or attempt to prove that he had sold the vessel at any price, nor what it would cost to finish the cabin, but that the arbitrators received the bare statements of the defendant, of the facts last mentioned, without being under oath, though the reception of the defendant's statements by the arbitrators was objected to by the complainant as unlawful and improper. That the arbitrators, after having heard the evidence and allegations of the parties, and having re-

tired to consider of their award, and after the counsel of the complainant had left the place of trial, called the parties before them, and examined the defendant upon the matters in controversy, without the consent or permission of the complainant. That two of the arbitrators, on the ninth of January, eighteen hundred and thirty-nine, made their award upon the matter in difference, awarding that the said John Cuttrell should pay to the complainant, out of the monies in his hands, two hundred and eighty dollars, thereby allowing to him six hundred and eighty dollars for his loss sustained upon the vessel. The bill further charges, that the defendant deceived him in regard to the amount of damages claimed by him, representing that he claimed only two hundred and eighty dollars, when in fact he claimed seven hundred dollars; that the arbitrators acted unlawfully in the admission of illegal testimony, and also in admitting the statements of the defendant unsustained by proof; that they acted with gross partiality in awarding six hundred and eighty dollars to the defendant, without any evidence in support of such damages; and that they made a gross mistake in point of law, in awarding any thing to the defendant upon the evidence in the case. The bill prays that the arbitration bond and award may be declared null and void, and may be ordered to be delivered up to be cancelled.

To this bill there was a general demurrer for want of equity.

*Hartshorne*, for complainant.

*Vredenburgh*, for defendant.

The Chancellor. This is a bill to set aside an award of arbitrators made between the parties, to which the defendant has demurred for want of equity. This presents the question, whether the case stated by the complainant, if true, is one proper for the interference of the court.

The grounds for interference with awards in this court has been a subject often discussed, and may now be considered as

[Adm'r of Schenck v. Cuttrell.]

well settled.  To impeach an award, there must be corruption, partiality, or gross misbehaviour in the arbitrators, or some palpable mistake made by them in the law or fact.  *Tittenson* v. *Peat,* 3 *Atkyns,* 529 ; 3 *Atkyns,* 644 ; *Herrick* v. *Blair and Blair,* 1 *Johns. Ch.* 101 ; *Underhill* v. *Van Cortlandt,* 2 *Johns. Ch.* 361 ; *Campbell* v. *Western,* 3 *Paige,* 138.

All the cases agree that corruption or gross misbehaviour in the arbitrators, will be fatal to an award, and the later cases recognize the principle that a plain mistake, either in law or fact, will also be sufficient to destroy it.  This being a tribunal of the parties' own choosing, of a domestic character, and in many cases a very convenient and cheap mode of settling controversies, their doings are construed liberally.  A mistake in the law, therefore, must be a plain one, and upon some material point affecting the case, and the mistake in fact must in general be such as the arbitrator himself would admit, such as a miscalculation in an account, and the like.  As to error in judgment on the merits, it is no ground whatever for the interposition of a court of equity.  This would put an end to all arbitrations, for it would at once declare that the arbitrators must give the same decision that this court would have given under the like circumstances.  This is not necessary.  So too, a mistake in the admission, or rejection of evidence not materially affecting the decision, although not strictly according to law, is no ground for interference.  The language of chancellor Walworth in the case last cited, in speaking of the impropriety of interfering in such case, is very correct.  He says, "if every party who arbitrates in relation to a contested claim to save trouble and expense, is to be subjected to a chancery suit and to several hundred dollars costs, if the arbitrators happen to err upon a doubtful question as to the admissibility of a witness, the sooner these domestic tribunals of the parties' own selection are abolished the better.  Such a principle is wholly inconsistent with common sense, and cannot be the law of a court of equity."

If, therefore, upon examining this bill, taking the case as there stated, there shall be made out against the arbitrators, corruption,

partiality, or gross misbehaviour, or a palpable mistake in law or fact on a material point, the suit must be sustained, otherwise not.    I will not look at all at the question, whether the ultimate judgment which the arbitrators came to was right or wrong: *that,* the parties themselves agreed, should be settled by other men.

To have enabled me the better to come at the case, the complainant should have set out the arbitration bond and the award. By that it would have appeared what was submitted.    I take it for granted, however, that it embraced in form, the controversy between the parties touching the nine hundred and sixty dollars which the complainant claimed to have refunded by the defendant, as monies paid him by the intestate on a contract for building a vessel; and on the other hand, the deduction from that sum by way of damages, which the defendant claimed on his part, for his loss by the complainant's not fulfilling the contract.    It was, doubtless, to put an end to this difficulty, that the arbitration was entered into.

The charges in the bill, and on which the complainant relies, must be examined separately.

The first charge is, that the complainant was deceived before entering into the bonds, by a conversation he had with the defendant, in which he stated his loss on the vessel to have been about two hundred and eighty dollars, which was all that he claimed, when the award has made him a much larger allowance.    The matters submitted were defined and fixed by the bond, and there is no pretence that any limit to the defendant's claim was there made. It would indeed seem strange that a party should recover more than he stated his claim to be, and yet he might well be mistaken in a matter of this kind.    Be that, however, as it may, the mere conversation of the parties prior to the hearing can be no ground for disturbing an award made in so solemn form.

The second charge is, that the arbitrators admitted illegal evidence.    They admitted Francis Cuttrell to prove that Schenck, the intestate, agreed by parol with the witness and the defendant, while they were partners, to build him a vessel at forty dollars a ton without finishing the cabin, and that the witness and the de-

fendant afterwards dissolved partnership. This is objected to, because it would contradict a written agreement made between Schenck and the defendant, for building the vessel referred to in this cause. This agreement is not set out in the bill, and it is therefore impossible for me to say what foundation there is for this charge. But the complainant is bound to state in his bill a palpable mistake in the decision of the arbitrators. It is very easy to conceive how this evidence might have been proper. If no price was fixed in the agreement, this would be a very proper mode to come at a fair valuation. I can hardly suppose it was ever intended that evidence like this should control a written agreement between the parties. If such was the fact, the agreement should have been set out, and the manner in which the proof contradicted the agreement specified. The bill does not even affirm that this evidence did in fact contradict the writing, but merely that counsel took that ground before the arbitrators.

The third charge is, that the statement of the defendant was received as to material facts, without proof, and when objected to by the complainant. If this was so, there can be no doubt it would be so gross an impropriety as would call for the aid of the court. But when I look at the facts which the defendant established in this way, they appear to be no way material to the decision of the cause. What was the question before the arbitrators? Mr. Schenck, the complainant's intestate, a short time before his death, entered into an agreement with the defendant to build him a vessel, and paid him on account nine hundred and sixty dollars. After his death, the complainant's co-administrator, with his approbation, informed the defendant that the said administrators could not complete the contract for building the said vessel, and that they should claim of him the nine hundred and sixty dollars which Mr. Schenck had paid. The charge in the bill is, "that the defendant did not offer or produce any evidence whatever before the said arbitrators, that he had given any notice to the said administrators, or either of them, that he should hold them to the said contract, or that he finished the said vessel for the said administrators, or for your orator as survivor, at

the time mentioned in the said contract, or at any other time, or that he finished the said vessel with a cabin, or that he sustained any loss whatever on said vessel; nor did he offer or attempt to prove, that he had sold the said vessel at any price, or what it would cost to finish the cabin, but received the statement of the defendant alone on these facts." After the administrators had notified him that they would not fulfil the contract on their part, the defendant was not bound to go further. He might stop there; and whether he ever finished the vessel or not, or gave them any notice or not, he might fairly, as it appears to me, remunerate himself out of the money already paid, for his trouble and expenses as far as he had gone. The question of damages is, and must be, a matter resting in discretion, to be judged of, not from any positive proof of the amount of the loss, but from the general circumstances attending the case. This charge is entirely too general and uncertain in its character to justify the interference of the court. What the evidence was upon which the arbitrators acted, does not appear. There may have been such a state of facts proved as to enable the arbitrators to form a fair judgment as to the amount of remuneration the party was entitled to.

The last charge is, that the arbitrators, after hearing the evidence, and while considering of their award, called the parties before them, and asked the defendant questions concerning the case, without the permission or consent of the complainant. It would seem that they called both the parties in, and that too, without any objection being made by the complainant. In these investigations before arbitrators, often conducted by men unskilled in the forms of judicial proceeding, to set aside an award because the arbitrators asked the parties questions, without objection being made at the time, and when both were present, and that too, without stating what those questions were, would be holding too strict a rule, and be foreign to that liberal construction which should ever be placed on the conduct of a tribunal chosen by the parties themselves.

This award may be wrong in amount, and it may, for aught that appears to me, be all right. At all events the bill does not,

[Adm'r of Schenck v. Cuttrell.]

in my view, present a case proper to call on the defendant to answer. There is no such feature presented as will justify me in sustaining the bill. The bill must, therefore, be dismissed, with costs.

Decree accordingly.