David Alpert et al., Doing Business as Z. Alpert & Sons, Respondents, *v.* Admiration Knitwear Co., Inc., Appellant.

Argued February 28, 1952; decided April 17, 1952.

*James F. Twohy* for appellant. I. A contract, which includes a provision for arbitration in the event of a dispute, is no different from any other agreement and is, therefore, subject to the elementary laws of contract. (*Matter of Zimmerman [Cohen]*, 236 N. Y. 15; *Matter of Manufacturers Chemical Co. [Caswell, Strauss & Co.]*, 259 App. Div. 321.) II. The decision and order of the Appellate Division is contrary to law in that the court failed to consider the effect of the failure of respondents to comply with the condition precedent expressly stated in the contract. (*Matter of International Assn. of Machinists [Cutler-Hammer, Inc.]*, 271 App. Div. 917, 297 N. Y. 519; *Matter of Brookside Mills [Raybrook Textile Corp.]*, 276 App. Div. 357; *Matter of Kahn [National City Bank]*, 284 N. Y. 515; *Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467; *Matter of General Elec. Co. [United Elec. Radio & Mach. Workers]*, 300 N. Y. 262.) III. Respondents' contention of bad faith is immaterial. IV. The question of good faith is not an

issue under the facts. (*Matter of Tuttman* [*Kattan, Talamas Export Corp.*], 274 App. Div. 395; *Heller & Henretig, Inc.,* v. *3620–168th St., Inc.,* 302 N. Y. 326.)

*Leo E. Sherman, William I. Alpert* and *Abraham Alpert* for respondents. The reasons given by appellant for refusing to submit the controversy to arbitration raise questions on the merits " arising out of or relating " to the contract and are for the arbitrators. (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *Matter of Cantor,* 261 N. Y. 6; *Matter of Zimmerman* [*Cohen*], 236 N. Y. 15; *Matter of Manufacturers Chemical Co.* [*Caswell, Strauss & Co.*], 259 App. Div. 321; *Matter of Wenger Co.* v. *Propper Silk Hosiery Mills,* 239 N. Y. 199; *Matter of Tuttman* [*Kattan, Talamas Export Corp.*], 274 App. Div. 395; *Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers*], 300 N. Y. 262; *Matter of Graphite Metallizing Corp.* [*De Rosa*], 271 App. Div. 839.)

LEWIS, J. We are to determine whether in the commercial transaction which gave rise to this proceeding there remains between the parties an arbitrable dispute. That question is one of law. (*Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers*], 300 N. Y. 262, 264.)

On May 12, 1950, the petitioners-respondents — to whom reference will be made as the purchasers — entered into a written contract for the purchase by them from the appellant — the seller — of a quantity of woolen material. The fact is of some importance that in preparing the written contract to contain a recital of terms upon which agreement had been reached, the purchasers chose one of their own contract forms formerly used by them in transactions where they were sellers. The adaptation was accomplished by one of the purchasers, who struck from the form their name as sellers and in place thereof wrote in the name of the appellant. It is thus made clear that, by adapting one of their own contract forms to the requirements of the agreement here involved, the purchasers were fully aware of the terms thereof and the purpose to be served thereby. It was also noted on the front of the agreement that the sale was to be F.O.B. at Philadelphia and that shipment was to be " at once ".

Over the signatures of the two parties, which appear on the front of the single sheet upon which the contract was written, there was printed the following:

" THE CONDITIONS OF SALE PRINTED ON THE BACK HEREOF ARE HEREBY MADE PART OF THIS CONTRACT.

" *The undersigned hereby orders the above goods upon terms as stated, including the terms and conditions printed on the back of this contract and forming a part hereof.*"

On the back of the contract were printed fifteen " CONDITIONS OF SALE ", among which is the following: " 2. \* \* \* if *at any time, in the sole opinion of the Seller,* the financial responsibility of the Purchaser shall become impaired *or unsatisfactory to the Seller* cash payments in advance of delivery may be required. Upon failure to pay any amount due to the Seller under this \* \* \* contract, the Seller may at its option terminate this contract \* \* \* as to further deliveries, *and no forbearance or course of dealings shall affect this right of the seller.* \* \* \* " (Emphasis supplied.)

Exercising the arbitrary right which the parties to the transaction, by their written agreement, had seen fit to accord to the seller, the following letter was sent to the purchasers by the seller under date of June 8, 1950:

" ADMIRATION KNITWEAR CO., Inc.
347–5th Avenue
New York 16, New York

June 8th, 1950

Z. ALPERT & SONS
220–4th Avenue
New York 3, New York

Gentlemen:

In reference to our contract of May 12th, 1950 it is my opinion that your financial responsibility is unsatisfactory under all the circumstances of this sale.

I am therefore demanding that you pay in advance of any shipment of the woolens that may come from Philadelphia. Will you kindly contact me immediately relative to a disposition of this matter as I am ready, willing and able to deliver the goods upon payment.

Unless I hear from you relative to these arrangements on or before June 16th, 1950, I shall deem the contract abandoned and will proceed to dispose of the goods in other channels.

Yours very truly,

(signed) DAVID SCHWARTZ

DAVID SCHWARTZ

President ''

Following failure by the purchasers to comply with the seller's letter demanding cash payment in advance of shipment, the purchasers applied at Special Term for an order directing that the controversy, thus created between them and the seller, proceed to arbitration under the following '' condition '' in their contract:

'' 8. Any complaint, controversy or question which may arise with respect to this contract that cannot be settled by the parties thereto, shall be referred to arbitration in the following manner: * * *

'' (b) All other controversies arising out of or relating to this contract, or breach thereof, shall be settled by arbitration in accordance with the Rules, then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in the highest court of the forum, State or Federal, having jurisdiction.''

At Special Term the order for which the purchasers applied was denied. At the Appellate Division the order of Special Term was reversed — two Justices dissenting — and an order was granted in accord with the purchasers' original application. The case comes to us upon the seller's appeal taken as of right.

We read the decisive '' condition '' numbered '' 2 '' of the contract (quoted *supra*) as a plain provision whereby the purchasers gave to the seller the absolute right to require '' cash payments in advance of delivery '' whenever, in its '' sole opinion '', the financial responsibility of the purchasers became '' impaired or unsatisfactory to the Seller ''. In the exercise of that contract right the record shows that the seller, by its letter of June 8, 1950 — concededly received by the purchasers — demanded payment in advance of any shipment, the ground of such demand being that in the seller's opinion the financial responsibility of the purchasers was unsatisfactory.

Such letter also gave notice to the purchasers that the seller was then " ready, willing and able " to make delivery of the goods upon advance payment therefor; that the purchasers would have eight days within which to arrange for such payment, and that upon a failure by the purchasers within that time to comply with the seller's demand, the contract would be deemed abandoned and the seller would make other disposition of the woolens.

Concluding, as we do, that the seller's demand and notice to the purchaser, contained in its letter of June 8, 1950, was in accord with its right expressly provided by the contract, we think the case falls within the rule stated in *Matter of General Elec. Co. (United Elec. Radio & Mach. Workers)* (300 N. Y. 262, 264, *supra*): " If, under the unambiguous terms of an agreement calling for arbitration, there has been no default, the court may not make an order compelling a party to proceed to arbitration (*Matter of International Assn. of Machinists [Cutler-Hammer, Inc.]*, 271 App. Div. 917, affd. 297 N. Y. 519). Whether or not a bonafide dispute exists is a question of law (*Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills*, 239 N. Y. 199, 202–203). If there is no real ground of claim, the court may refuse to allow arbitration, although the alleged dispute may fall within the literal language of the arbitration agreement."

The record before us does not support the suggestion that, in view of the contract phrase " ship at once ", the seller was in default on June 8, 1950, by reason of nondelivery. From a provision in the contract giving the seller an option of one week to repurchase, the inference may fairly be drawn that delivery would not be made before the expiration of that option. We also are informed by the reply affidavit filed at Special Term by the purchasers in support of their application, that in " the first part of June, I [Leon Alpert] * * * asked him [the seller's president] to * * * ship the merchandise * * *." It thus appears that early in June the buyer still desired the seller to perform its obligation under the contract. In other words, the purchasers did not at that time — " the first part of June " — consider the seller in default, nor had they elected to cancel the contract for that reason. As we have seen it was shortly thereafter — on June 8, 1950, still in the " first part of

June '' — that the seller made his demand under the contract for payment in advance of delivery, with which the purchasers have failed to comply. In those circumstances, there is no support for the suggestion that the seller had breached the contract by its failure to deliver. On the contrary it was the purchasers' failure to tender payment — properly requested by the seller pursuant to the terms of the contract — which has resulted in the termination of the contract.

The assertion in the purchasers' reply affidavit that their financial rating in the field of commerce is " a good safe credit risk " has not escaped our attention. It is, however, in our view, irrelevant in the light of the unequivocal language in the contract by which the purchasers gave the seller the absolute right " *at any time* " to require cash payment in advance of delivery of the woolens if " *in the sole opinion of the Seller,* the financial responsibility of the Purchaser shall become  *  *  * *unsatisfactory to the Seller* ". (Emphasis supplied.)

Absent any showing of a tender by the purchasers pursuant to the seller's demand, no conclusion is warranted by the record before us other than that, after June 16, 1950, the contract no longer was in existence. Accordingly, we agree with the court at Special Term that no issue remained which properly could be submitted for decision to arbitrators. (*Matter of Kramer & Uchitelle, Inc.,* 288 N. Y. 467, 471; *Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers*], *supra*; and see *Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 297 N. Y. 519.)

The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., CONWAY, DYE, FULD and FROESSEL, JJ., concur with LEWIS, J.; DESMOND, J., dissents for the reasons stated by the Appellate Division in its memorandum decision here, as amplified by its reference to the present case in *Matter of Minkin (Halperin)* (279 App. Div. 226, 230, 231).

Ordered accordingly.