Dye, J.
The petitioner-respondent, Newspaper Guild of New York, Local 3, ANG, CIO, hereinafter called “ Guild ” and the respondent-appellant, Brooklyn Eagle, Inc., hereinafter called *557 the “ Publisher ”, under date of November 30, 1952, entered into a collective bargaining agreement affecting the employees in the Publisher’s editorial and commercial departments. The agreement was for a period of two years unless changed by mutual consent. If either party desired to change the terms, it could give notice of its desire to the other “ Not more than 90 days and not less than 60 days prior to the expiration * * * thereof ”, in which event, negotiations were to commence immediately and ‘ ‘ proceed with all due diligence ’ ’. It further provided that: “If an agreement has not been reached by the date upon which this agreement expires, status quo conditions shall be maintained during negotiations unless and until such negotiations are terminated by either party ” (§ 27).[1] By letter dated September 1, 1954, which was within the time limitation provided therefor, the Guild notified the employer of its desire to modify the collective bargaining agreement and requested a joint conference at a mutually convenient date. Thereafter the parties negotiated in joint session both prior to and subsequent to November 30, 1954, the expiration date of the contract, but without reaching a mutually satisfactory agreement.
On January 28, 1955 the Guild, acting upon the instructions of the affected employees, called a strike. Nonetheless, negotiations continued earnestly and in good faith in an effort to reach a new agreement until broken off on or about March 8, 1955. Thereafter, by letter dated March 16,1955, the Publisher notified the Guild that “ an insoluble impasse ” had been reached and *558 that since further negotiations would “be futile ”, “we elect to, and hereby do, terminate them forthwith.” The Publisher also advised the Guild that: “ The consequences of the strike have destroyed the Brooklyn Eagle and we do not intend ever to resume publication of the neAvspaper.” On the same day, the Guild notified the Publisher via Western Union that, because of its announced intention to suspend publication of its newspaper, the employee benefit provisions of the collective bargaining agreement were deemed operative and demanded that Publisher immediately: ‘ ‘ remit all severance pay, accrued vacation pay, unpaid overtime and holidays, notice of dismissal pay, sick leave pay and any and all other benefits earned by your employees * * * up to January 29, 1955 ”.
When the Publisher rejected these demands, the Guild moved at Special Term, pursuant to section 1450 of the Civil Practice Act, to compel the Publisher to proceed to arbitration in accordance Avith its collective bargaining agreement.[2] The Special Term granted petitioner’s motion in all respects except insofar as it sought arbitration of severance and notice of dismissal pay.
Upon appeal, the Appellate Division, First Department, reversed so much of the Special Term order as had refused to direct arbitration on the claims of severance and notice of dismissal pay, made new findings and conclusions of law in respect thereto, directed that arbitration proceed as to those claims and, as so modified, affirmed.
In this appeal, taken as of right, the appellant Publisher challenges only so much of the order as granted petitioner-respondent’s motion to compel arbitration of claims for severance, notice of dismissal and vacation pay. The appellant argues that since the status quo ended on either (as found by *559 Special Term) January 28, 1955, tlie date of the strike, or (as found by the Appellate Division) on March 8, 1955, the date joint sessions ended, there was no agreement in existence on March 16, 1955, the date the Publisher elected to terminate negotiations; in other words, that the alleged claims for employee benefits did not accrue until after the agreement had terminated, thus raising an issue as to whether the claims have any basis in the collective bargaining agreement which the court and not the arbitrators should decide. The appellant cites Alpert v. Admiration Knitwear Co. (304 N. Y. 1) and Matter of General Elec. Co. (United Elec. Workers) (300 N. Y. 262) to support its position. Both Alpert and General Electric are distinguishable. In Alpert, purchasers of woolen goods had failed to establish financial responsibility, as required by the contract which the seller elected to cancel; consequently, no question remained which could properly be submitted to arbitration. In General Electric, we held that an antidiscrimination clause in one contract could not be invoked to compel arbitration of a dispute arising out of another. Thus, both Alpert and General Electric stand only for the proposition that if, under the clear terms of an agreement calling for arbitration, there has been no default, the court may not make an order compelling a party accused of default to arbitrate. While it is true that whether or not a bona fide dispute exists is for the court (Matter of Wenger & Co. v. Propper Silk Hosiery Mills, 239 N. Y. 199), it is equally true that in a proceeding to compel arbitration the question for the court to pass upon is whether the written contract provides for arbitration and, if so, whether there was a failure to proceed with the obligation to arbitrate (Matter of Kahn [National City Bank], 284 N. Y. 515). The question of performance goes to the merits and is a matter for the arbitrators whenever it appears that the parties have so consented (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, motion for reargument denied 289 N. Y. 647); and when such consent is given, the courts of New York will give it effect (Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36). Whether the “ status quo ” ended on January 28 or March 8, 1955 — due to the conduct of the Build — as contended by the appellants, or on March 16 — due to the acts of the Publisher — as claimed by the respondents, does not prevent the latter from invoking arbitration as called for *560 in the agreement, since the issue is not whether petitioner is right, but whether it is entitled to have the issues determined in the forum designated in the agreement (Matter of Lane [Endicott Johnson Corp.], 274 App. Div. 833, affd. 299 N. Y. 725; cf. Matter of Selly [French Tel. Cable Co.], 178 Misc. 1076). When these parties executed the within collective bargaining agreement containing the broad and comprehensive langauge “ Any dispute * * * arising out of or relating to ” (n. 2, supra), they must be deemed to have intended the enforcement of its terms by arbitration. Accordingly, whether or not the Guild called the strike in breach of the “ no strike ” clause constitutes no defense to this motion to compel arbitration (Matter of Kahn [National City Bank], supra). Furthermore, it has long been the rule that striking employees do not lose their status as employees; this was so at common law (Jeffery-De Witt Insulator Co. v. National Labor Relations Bd. 91 F. 2d 134, cert. denied 302 U. S. 731), a principle now embedded in our State statute (Labor Law, § 701, subd. 3; cf. Degnan v. Metropolitan Life Ins. Co., 178 Misc. 312) and Federal statutes regulating labor relations (U. S. Code, tit. 29, § 152, subd. [3]; cf. Labor Bd. v. Mackay Co., 304 U. S. 333).
The collective bargaining agreement makes specific provisions for severance, dismissal and vacation pay under certain named conditions. Whether these conditions have been satisfied is a matter of sharp dispute and one which necessarily arises out of and relates to the contract. While the employees could have brought suit for the amount allegedly due them, absent any other remedy, the Guild as the chosen bargaining representative and the Publisher consented to a settlement of any dispute arising out of and relating to the agreement — and this includes the controverted items of pay — by arbitration, a remedy which they primarily and exclusively placed within the jurisdiction of the arbitral tribunal (cf. Matter of Teschner [Livingston], 285 App. Div. 435, affd. 308 N. Y. 972; Matter of Compagnie Francaise des Petroles [Pantepec Oil Co.], 279 App. Div. 851 [1st dept.], affd. 305 N. Y. 588; Matter of Lane [Endicott Johnson Corp.], supra). On this record we are satisfied that the motion to compel arbitration was properly granted. We pass on no other question.
The order appealed from should be affirmed, with costs.

. “ This agreement shall, unless changed by mutual consent, be in effect from its date for a period of two years.
“Section 5 — Minimum Wages, Section 6 — General Wage Increase, Section 10 — Severance Indemnity, and Section 11 —Vacations, may be reopened as of December 1, 1953, upon written notice of either party to the other given not more than 90 days and not less than 60 days prior to December 1, 1953. If agreement upon any reopened matters shall not be reached by December 1, 1953, such matters shall be submitted to arbitration under the rules provided by Section 21, Grievance Committee.
“ Not, more than 90 days and not less than 60 days prior to the expiration of this agreement, either party may give to the other party notice of desire to change the terms thereof. In the event of such notice, negotiations shall be immediately entered into and proceed with all due diligence. If an agreement has not been reached by the date upon which this agreement expires, status quo conditions shall be maintained during negotiations unless and until such negotiations are terminated by either party.”

. Arbitration Agreement dated November 30, 1952 provides: “ Seetion 21 * * * (b) Any dispute, claim, grievance or difference arising out of or relating to this agreement which the Guild and the Publisher have not been able after reasonable effort to settle, shall be submitted to arbitration upon notice of either party to the other, under the labor arbitration rules then obtaining of the American Arbitration Association. The parties agree to abide by the award subject to such rules and regulations as any Federal agency having jurisdiction may impose. The parties further agree that there shall be no suspension of work over an issue which is in dispute and is in process of arbitration. The expenses of an arbitration shall be borne equally bv the parties.”