The ARMSTRONG–NORWALK RUBBER CORPORATION, Plaintiff

v.

LOCAL UNION NO. 283, UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, A.F.L.–C.I.O., Defendant.

Civ. No. 7507.

United States District Court
D. Connecticut,
Civil Division.

Nov. 6, 1958.

As Amended Nov. 19, 1958.

John W. Barclay, Thompson, Weir & Barclay, New Haven, Conn., Edward Schneider, Harold Rosenwald, Boston, Mass., for plaintiff.

Daniel Baker, Stamford, Conn., for defendant.

ANDERSON, District Judge.

The plaintiff employer and the defendant union entered into a collective bar-

gaining agreement on May 23, 1957 which was to remain in effect for two years. It contained a provision whereby either party was given the power to reopen the contract to renegotiate the general wage scale. If, sixty days after notice of the intention to reopen for such purpose, the parties had not satisfactorily concluded their negotiations, the contract was to terminate unless extended by mutual agreement. If it were thus terminated, it was to be reinstated upon satisfactory completion of the negotiations.

On June 2, 1958, the union gave the employer notice of its intention to reopen the agreement to renegotiate the general wage scale. Two weeks later on June 16, the employer discharged one Daniel Clayborne, Jr., who was the union president. The complaint alleges that the discharge was for good cause. The union claimed that the discharge was in violation of the collective bargaining agreement and invoked the grievance procedure provided by the contract. When negotiations on the grievance did not lead to settlement, the union demanded arbitration. By August 5, no action had been taken on the Clayborne discharge.

At that time, the union demanded that the employer reinstate Clayborne without arbitration, and on August 11, 1958, the demand was repeated, coupled with the threat that the union would call a strike if the employer refused. On that date the union did call a strike, which lasted until September 17, 1958, and which substantially stopped production at the employer's plant.

It is the legal consequence of this strike which is the major issue in the present action. The employer has sued to stay arbitration of the Clayborne discharge on the theory that the strike was a repudiation of the no-strike provision of the collective bargaining agreement which forfeited the right of the union to invoke arbitration and freed the employer of any obligation to arbitrate the matter of Clayborne's discharge. The employer concedes that the discharge was

arbitrable at the start; but it claims that the union, by resorting to the economic sanction of a strike, waived the right to have the arbitration continue, and in this action moved for a preliminary injunction to stay the arbitration. The union countered with motions to dismiss the action, or alternatively to stay the action pending arbitration. The parties agreed to have the latter motions heard first.

■ The objections which the defendant raised to Federal jurisdiction in its motion to dismiss cannot be sustained. It is now settled that under Section 301 (a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), Federal courts have jurisdiction to determine the obligation of parties to arbitrate disputes under collective bargaining agreements in industries affecting commerce. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. Lincoln Mills, it is true, was a suit to compel arbitration; but a correlative of the power to compel is the power to refuse to do so. The question in the present case—whether arbitration should be ordered to go forward or stayed—is identical with Lincoln Mills; and it is this which determines jurisdiction rather than what party brings the suit. The case of Mengel Co. v. Nashville Paper Products and Specialty Workers Union, 6 Cir., 1955, 221 F.2d 644, cited by the defendant, was decided before the Lincoln Mills case, and it would probably not be followed by the 2nd Circuit.

■ The defendant's motion to dismiss also raised a question as to the sufficiency of the complaint. Section 2 of the U. S. Arbitration Act, 9 U.S.C.A., provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an

existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

The defendant contends that since the plaintiff did not revoke the contract, the arbitration provision is still binding under Section 2. In the first place, however, the statute requires only that grounds for revocation exist; it does not, in so many words, require that the contract be revoked. It was argued orally by the plaintiff, and not denied by the defendant, that if the strike was a breach, it was a material breach which would have justified revocation of the entire contract. Furthermore, despite the language of Section 2, it has been held that a party may waive the arbitration clause, either by action or agreement. See, e. g.: Council of Western Electric Technical Employees—National v. Western Electric Co., 2 Cir., 1956, 238 F.2d 892; Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978, Annotation, 161 A.L.R. 1426 ff. The cases cited by the defendant for the proposition that, unless the plaintiff alleges that the contract is entirely revoked all its obligations are binding, are therefore not persuasive. The action will not be dismissed for insufficiency of the complaint.

The defendant's motion for stay of the suit requires analysis of the contract between the parties. In its pertinent parts, the Collective Bargaining Agreement provides:

"Article III

"Company Security
"Section 5.

\* \* \* \* \* \*

"(b) Since adequate provisions have been made in this Agreement for settlement of all disputes that may arise between the parties, the Union agrees not to engage, encourage, sanction, or approve any strike, stoppage, slow-down, or other inter-

ruption of work during the life of this Agreement. On the contrary, the Union will actively discourage any strike, stoppage, slow-down, or other interruptions of work in violation of the Agreement. The Company agrees that neither it nor its representatives will put into effect any lock-out during the terms of this Agreement.

"Article IV

"Grievance Procedure
"Section 6. Any difference by either the Company or the Union involving the meaning or application of any provision of this Agreement or any claim by either party that the other party is in violation of any provision of this Agreement may constitute a grievance and shall be taken up in the manner hereinafter set forth:

\* \* \* \* \* \*

"Step Five. In the event that any one grievance is not settled through conferences of the Company and Union representatives, it shall, upon written notice by either party to the other party within thirty (30) days after failure to reach a disposition of the grievance in Step Four, be referred to the American Arbitration Association. \* \* \*
"Section 7.

\* \* \* \* \* \*

"(b) If the union disputes a discharge the matter shall be handled through the grievance procedure provided in this Agreement commencing with Step Two. \* \* \*"

Now there is no doubt that the parties intended that the discharge of an employee was referable to arbitration under the grievance procedure and appropriate steps had been taken to this end. The plaintiff employer contends that the questions to be answered are: whether the union breached the agreement by its strike, and if it did, whether as a consequence of that strike it forfeited its right to have the arbitration procedure continue. But the basic question first to

be decided is whether these questions should be referred to the arbitrator.

The answer lies in the provisions for arbitration in the contract itself. Not only does arbitration encompass "any difference by either the Company or the Union involving the meaning or application of any provision", but it is also to be used in the event that there is "any claim by either party that the other party is in violation of any provision of this Agreement. * * *" This is the broadest type of grievance and arbitration provision; it could hardly be more plenary.

In the case of Signal-Stat Corp. v. Local 475, United Electrical, Radio & Machine Workers, 2 Cir., 1956, 235 F.2d 298, the Court held arbitrable a dispute arising under facts almost identical to those in this case. A dispute arose concerning the discharge of two employees, and the union called a strike. After the strike had been settled by an agreement to arbitrate the discharge, the company sued the union for damages. The Court held that whether the union had breached the agreement, and if so what damages it must pay were issues referable to an arbitrator under the language of a broad grievance-arbitration provision. The provision in the present case is even broader than it was in Signal-Stat. And it makes no difference that here the claimed consequence of a breach is not damages, but waiver of a right to arbitrate. The basic issues—whether the strike was a breach and what were its legal consequences—are identical in both cases. Although no consideration of the waiver question appears in that case, the principles are the same.

Plaintiff relies chiefly on two cases for the proposition that the controversy is not now arbitrable. In Cuneo Press, Inc., v. Kokomo Paper Handlers' Union No. 34, 7 Cir., 1956, 235 F.2d 108, the Court held that a union which struck in lieu of submitting a claim to arbitration had forfeited its right to arbitration of a damage claim. But there the union took no steps to arbitrate at any time, and the Court found that it was thus in default in proceeding to arbitration under the pertinent provision of the U. S. Arbitration Act, 9 U.S.C.A. § 3. In Council of Western Electric Technical Employees-National v. Western Electric Co., 2 Cir., 1956, 238 F.2d 892, the Court found that by refusing to arbitrate the question of minimum job classifications, an employer waived its right to have the union's suit stayed pending arbitration of that question. But the Court went on to say that the employer did not thereby forfeit its right under the contract to have an arbitrator determine the damages caused by the breach.

Insofar as these cases find a waiver they are not at odds with the ruling in the present case. All that is here decided is that the parties contracted in advance to submit such questions to arbitration. It does not appear that the contractual provision in Cuneo was as broad as in the instant case. First the Court said there was no longer any issue referable to arbitration under the agreement. And since the union had made no demand for arbitration before the strike, or even before the suit, the Court said a finding that they were in default in proceeding with arbitration was justified. 235 F.2d at page 112.

In Western Electric the Court confined waiver to the precise dispute as to which there had been a breach. There the refusal was express and admitted; the grounds for finding a default in proceeding to arbitration under Section 3 of the Act were undisputed. Moreover, the question of whether a refusal to arbitrate was a waiver was not an arbitrable problem. In the present case the parties agreed to submit to the arbitrator all claims that there had been a breach of the contract.

Nor does it appear, even under the doctrines of Cuneo and Western Electric, that the union was in default in proceeding with arbitration. In the former case the defendant had never claimed arbitration, and in the latter the defendant had refused to proceed. The statute makes these acts a default; but it does not require, as a condition precedent to arbitra-

tion, that the movant not be in breach of another provision of the contract. Shanferoke Coal & Supply Corp. of Delaware v. Westchester Service Corp., 2 Cir., 1934, 70 F.2d 297, affirmed 1935, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978, 989. This is not to say or imply that the *arbitrator* is not to consider the question of waiver as it may affect the proceedings relating to Clayborne's discharge. Indeed, it will be his duty before considering the discharge, to weigh the strike and its legal consequence on the company's obligation to arbitrate the Clayborne matter.

Finally, something should be said about the New York cases which found arbitrable disputes substantially similar to the one in this case. See, e.g., In re Furrier's Joint Council, 28 LA 62, 137 N.Y.Law Journal No. 34, p. 6, 31 Labor Cases Para. 70520 (N.Y.Sup.Ct.1957); In re Potoker, 1955, 286 App.Div. 733, 146 N.Y.S.2d 616, affirmed Potoker v. Brooklyn Eagle, Inc., 1957, 2 N.Y.2d 553, 161 N.Y.S.2d 609, 141 N.E.2d 841; Matter of Stewart Stamping Corp., 1955, 285 App.Div. 953, 138 N.Y.S.2d 327; 206 Misc. 1001, 136 N.Y.S.2d 266. Under the Lincoln Mills case, supra, state law, if compatible with federal law, may be resorted to in order to find the rule which will best effectuate federal policy. 353 U.S. at 457. Insofar as these cases hold, as a matter of law, that a strike in violation of the agreement is not a waiver of the right to arbitrate, they are not within the scope of this decision. Under Signal-Stat and Lincoln Mills, federal law requires courts to refer to arbitration all questions covered by the contractual arbitration provision. Not only was the Clayborne discharge arbitrable here, but the effect of a claimed breach of the no-strike clause of the contract was arbitrable as well.

The motion to dismiss the suit is denied.

The motion to stay the suit pending arbitration is granted.