In the Matter of the Arbitration between SAKS & COMPANY, INC., Respondent, and SAKS FIFTH AVENUE WOMEN'S SHOE SALESPEOPLE COMMITTEE, Appellant.

First Department, November 24, 1959.

*I. Arthur Rosenberg* for appellant.

*Ralph D. Ray* of counsel (*Chadbourne, Parke, Whiteside & Wolff*, attorneys), for respondent.

BREITEL, J. P.   The union appeals from an order of Special Term granting the motion of Saks & Company, the employer, to stay arbitration pursuant to a demand made under a collective bargaining agreement.   The underlying dispute relates to whether one Harry Share, a member of the union and an employee of Saks, is entitled both to severance pay and to pension benefits.

Because the employer's pension plan is, by its terms, one administered and interpreted exclusively by the pension committee set up under the plan, Special Term held that the dispute was not subject to arbitration.   An opposite result must be reached, because there is a dispute under the collective bargaining agreement and the general arbitration clause contained in it.

The collective bargaining agreement was entered into on May 26, 1958.   It is provided therein that, upon severance, union employees who have been employed for five years or more shall be paid a lump sum equal to one week's pay for each year of employment, the sum in no event to exceed eight weeks' earnings.   The agreement also provides, in paragraph 17, that: " Any pension plan, additional vacation or additional holiday

granted to salespeople in the New York Store generally shall also be extended automatically to employees covered by this contract. When available, the details of the Pension Plan now in effect and subject to ratification by the stockholders shall be communicated to the shoe salespeople of Departments 23 and 723."

The agreement also contains a general arbitration clause providing that: "Any dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able, after reasonable effort, to settle, shall be submitted to arbitration upon notice by either party to the other party in writing, stating the nature of the matter to be arbitrated."

The dispute tendered is whether the employer has in fact fully extended its pension plan to union employees, such as Mr. Share, and if it has, whether it is breaching its obligation under that extension to provide him with a pension in addition to severance pay.

The pension plan became effective on January 1, 1958, and was ratified at an annual stockholders' meeting thereafter. The plan, a unilateral noncontributory one established by the employer, is subject to termination or modification by the board of directors of the employer at any time. A pension committee appointed by the board of directors is to make all rules governing the administration and interpretation of the plan. Subdivision (b) of section 2.1 of the plan provides that, in order to be eligible, an employee " shall not be a participant or be eligible for participation in any plan providing retirement or similar benefits adopted before or after the effective date of this Plan, the cost of which is borne, directly or indirectly, in whole or in part by the Company and which plan is established or maintained by or in conjunction with any labor organization ".

In about April, 1959 Harry Share, who was retiring, requested severance pay. The employer requested a ruling from the pension committee as to the effect upon eligibility under the plan if severance pay were granted to the union member. The committee ruled, and Mr. Share was advised, that if he received severance pay under the collective bargaining agreement, he would not be entitled to pension benefits. In effect, the pension committee ruled that severance pay upon retirement fell within the category of " retirement or similar benefits " within the meaning of those words as used in subdivision (b) of section 2.1 of the pension plan.

Concededly, disputes involving the administration and interpretation of the pension plan as such are not arbitrable. What

is arbitrable, however, is whether the employer has extended the plan to the union employees, such as Mr. Share, in accordance with the obligation assumed by it under paragraph 17 of the collective bargaining agreement.

Even if the employer had purported to extend the pension plan to union employees, such as Mr. Share, there is still a question as to whether the extension, as interpreted by the pension committee, is fully in accord with the obligation the employer had assumed. To this limited extent, an arbitrable dispute is present, namely, whether the pension plan, as interpreted by the pension committee, satisfies the collective bargaining agreement in extending to Harry Share rights to which he is entitled within the meaning of paragraph 17 of such agreement.

Should the arbitrators find that the employer stands in breach of the collective bargaining agreement, they may make appropriate award, but may not direct the pension committee in the performance of its functions. If the arbitrators should usurp the functions of the pension committee, there may be remedy under section 1462 of the Civil Practice Act.

The province of the arbitrators is then to decide only whether paragraph 17 of the collective bargaining agreement has been satisfied by an extension of the pension plan. If there has been such an extension, there is nothing more to arbitrate. The application or interpretation of the plan is exclusively the province of the pension committee. True, the arbitrators may have to consider whether the interpretation of the pension plan by the pension committee resulted in the employer's failure to extend the plan, but no more. More concretely, the only question for the arbitrators is whether union members, such as Mr. Share, are being treated the same as others in the denial of severance pay, if they seek the retirement benefits under the plan — not whether under the plan a retired employee may be deprived of his benefits if he demands severance pay provided in some other context.

The situation, of course, is due to the provisions of the collective bargaining agreement. So long as the employer agreed to arbitrate disputes under it, including paragraph 17, the arbitration must follow. Thus, there is no incorporation by reference of the pension plan, as argued by the union, but there is, nevertheless, an arbitrable dispute whether the collective bargaining agreement was breached.

It often happens that an issue submitted for arbitration may present double phases, one of which is arbitrable and another which is not. So, it has been held that where an employer has done an act, bona fide, the dispute arising from it would be out-

side the scope of the collective bargaining agreement. But if, on the other hand, the act was not bona fide or involved some other obligation in the collective bargaining agreement, there might nevertheless be, to that extent, an arbitrable dispute.

Thus, in *Matter of Otis Elevator Co. (Carney)* (6 N Y 2d 358) the employer discharged union employees on the ground that their work was henceforth to be performed by an independent contractor. It was held that no arbitrable dispute existed under the collective bargaining agreement as to whether the employer had the right to do this. But the union also claimed that the independent contract was merely a subterfuge and that, in actuality, the nonunion men performing the work were really in the employment of the employer. The court held that, as to this phase of the dispute, it was for the arbitrators to determine whether there was a bona fide independent contract, but if there were, that was the end of the matter. (See, also, to the same effect, *Matter of Teschner [Livingston]*, 285 App. Div. 435, affd. 309 N. Y. 972.)

The authorities relied upon by the employer are distinguishable. In *Matter of General Elec. Co. (United Elec., etc., Workers)* (300 N. Y. 262) the collective bargaining agreement was silent on the subject of pension and there was no possible basis for a claim of discrimination. *Matter of Lloyd (Hollander & Son)* (17 Misc 2d 180, affd. 8 A D 2d 801) involved a collective bargaining agreement which provided for the establishment of a pension fund, but there was no contention that the employer had not met fully its commitments under the pension plan which took the form of a separate agreement executed by the union and the employer.

So, to hold that it is rational and logical to require a union employee to surrender severance pay as provided in the collective agreement if he is to receive retirement benefits is to state a conclusion that is within the province of the arbitrators. A retirement benefit, an arbitrator could find, is a kind of annuity, measured to some degree by length of prior service, but determined largely by the attained age at retirement. It involves some actuarial computation relative to life expectancy. Its purpose is security for superannuated employees. Severance pay, an arbitrator could also find, is a lump sum or installment payment, generally, measured by length of service, and is rarely, if ever, affected by the attained age of the employee whose service is terminating. Its purpose is to reward loyal employees for time served and to provide an economic bridge between changed employments.

Even in the pension plan itself there is language which, the union argues, suggests a distinction between retirement benefits and severance pay. Thus, in section 5.1 of article V of the pension plan it is provided: " This Plan shall not be construed as preventing the Company from paying additional disability, severance, or retirement allowances, or death benefits, or from making other provision in any case where in the opinion of the Board of Directors special circumstances exist."

But even were this court to conclude that for the purposes of the collective agreement in suit there is a controlling difference between retirement benefits and severance pay, this too would be a usurpation of the function of the arbitrators, or worse, that of the pension committee. Thus, whatever is said in this opinion is not intended to indicate any view as to how the collective agreement is to be construed by the arbitrators.

The foregoing is significant only to show that there is a genuine dispute as to the identity or similarity between retirement benefits and severance pay. From that dispute, in turn, it appears that there is a genuine issue whether the employer has extended its pension plan — or has extended it fully — as it contracted under paragraph 17 of the collective agreement. That issue is the arbitrable one.

Accordingly, the order of Special Term should be reversed, on the law, with costs to respondent-appellant, and the motion to stay arbitration should be denied.

STEVENS, J. (dissenting). I dissent and vote to affirm. There is no arbitrable issue within the terms of the agreement nor indeed any contract to arbitrate this issue.

Briefly, a noncontributing employee pension plan, herein called Plan, effective as of January 1, 1958, was established unilaterally by Gimbels Brothers, Inc., the parent corporation of petitioner-respondent, herein referred to as Saks. The Plan extended to all regular employees in units of the corporation and subsidiaries designated by the board of directors. The Plan was extended to and included Saks. Article II of said Plan provided, in part: " An employee complying with the following eligibility requirements shall be a participant in the Plan as herein provided:

" (a) he shall be engaged in regular employment; and

" (b) he shall not be a participant or be eligible for participation in any plan providing retirement or similar benefits adopted before or after the effective date of this Plan, the cost of which is borne, *directly or indirectly,* in whole or in part by the Com-

pany and which plan is established or maintained by or in conjunction with any labor organization ''. (Emphasis supplied.)

The administration of the Plan is vested in a committee appointed by the board of directors who are given the power to '' make all rules governing the administration and interpretation of the Plan.''

Harry Share, an employee of Saks and a member of respondent-appellant, herein called Union, is retiring. The Union claims that he is entitled to both severance pay under the union contract and retirement benefits under the Plan. The question of his eligibility was submitted to the committee for the Plan which ruled under date of April 16, 1959, that severance pay which Share was claiming was plainly '' retirement or similar benefits '' received under a Union contract and receipt of the same would disqualify him as a participant to receive benefits under the Plan.

The Union then served a demand for arbitration, claiming that under its written contract, dated May 26, 1958, there was a dispute for arbitration on its contention that Share was entitled to both severance pay and pension benefits.

The contract between Saks and the Union provided with reference to severance pay that persons employed '' for five (5) years or more shall be paid in a lump sum upon termination of employment an amount equal to one (1) week's pay for each year or major fraction thereof actual employment in such Departments [23 and 723] but said amount of severance pay shall in no event exceed an amount equal to eight (8) weeks' earnings computed as above.''

It was provided in paragraph 12 of the bargaining agreement, the section dealing with arbitration, the Union '' shall designate a Standing Committee of its own choice to take up with the Employer or an authorized representative of the Employer any matter arising out of *the application* of this Agreement '' and that '' [a]ny dispute, claim, grievance or difference *arising out of or relating to this Agreement* '' not settled '' shall be submitted to arbitration ''. (Emphasis supplied.)

Paragraph 17 of the agreement, so far as pertinent, states: '' Any pension plan, additional vacation or additional holiday granted to salespeople in the New York Store generally *shall also be extended* automatically to employees covered by this contract.'' (Emphasis supplied.)

The Union contends that this is a dispute which falls within the terms of its collective bargaining agreement and that the Union may not be deprived of its right to arbitrate the issue.

Saks argues that there is no agreement to arbitrate disputes arising under the Plan, and that it is for the court to determine what issues are arbitrable.

It is to be noted that the Plan is separate and distinct from the collective bargaining agreement. Indeed the only reference to the Plan is found in paragraph 17 of the collective bargaining agreement. The condition precedent or concurrent to its extension to employees covered by the agreement is that it (the Plan) be granted " to salespeople in the New York Store generally ".

When the Plan is extended, it is extended *in toto,* subject to any limitations contained therein as well as the conferring of any benefits for which it provides. The Plan declares that no vested rights are obtained prior to retirement, and that no employee shall be a participant therein if he is the beneficiary of any other plan or benefits " the cost of which is borne, directly  *  *  *  or in part by the Company and which plan is established or maintained by or in conjunction with any labor organization ". The Plan provides that the committee shall have the sole power to determine the eligibility of participants.

Whether or not a bona fide dispute exists under an arbitration agreement is a matter of law. (*Alpert* v. *Admiration Knitwear Co.,* 304 N. Y. 1.) " [T]he mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. It is for the court to determine whether the contract contains a provision for arbitration of the dispute tendered, and in the exercise of that jurisdiction the court must determine whether there is such a dispute." (*Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, 918, affd. 297 N. Y. 519.) The arbitration provision of the agreement dealt with " [a]ny dispute, claim, grievance or difference arising out of or relating to *this* Agreement ". (Emphasis supplied.)

As pointed out the Plan is separate from and independent of the agreement. The Union seeks, in effect, to have the Plan transplanted and its terms incorporated bodily or by reference so as to bring its provisions within the orbit of any dispute, etc., arising out of the agreement. If the desired construction be given, its effect is to compel a change in an independent Plan and to discriminate in favor of Union's members. This Saks should not be compelled to do for it has no such obligation. (Cf. *Matter of General Elec. Co.* [*United Elec., etc. Workers*], 300 N. Y. 262.) Its only obligation is to apply the benefits of the Plan equally.

The withholding of benefits under the Plan when an employee receives a separate benefit, the expense of which is borne in

whole or in part by the company, is both rational and logical. In my view there is no possible basis for a charge of discrimination, and by that token, no possible ground for arbitration.

The Union is not a party to the Plan, and in the view I take the Plan is not a part of the collective bargaining agreement and a mere provision for extension of its benefits does not make it so. The company had sole control over the Plan including the right to terminate it if it so desired. There is no contract to arbitrate. The burden is upon Union to show that there is an arbitrable dispute (*Matter of Essenson* [*Upper Queens Medical Group*], 307 N. Y. 68), and this it has not done. It has merely asserted in the face of the plain language of the Plan and of the agreement that Share is entitled to both benefits, i.e., severance pay and pension. (Cf. *Matter of Minkin* [*Halperin*], 279 App. Div. 226, affd. 304 N. Y. 617.)

The order appealed from should be affirmed.

VALENTE and MCNALLY, JJ., concur with BREITEL, J. P.; STEVENS, J., dissents and votes to affirm, in opinion in which M. M. FRANK, J., concurs.

Order reversed, on the law, with $20 costs and disbursements to appellant and the motion to stay arbitration denied, with $10 costs.