AMERICAN PRESIDENT LINES, LTD., et al., Petitioners,

v.

S. WOOLMAN, INC., Respondent.

United States District Court
S. D. New York.
Nov. 13, 1964.

Herman Goldman, New York City, for petitioners; Seymour H. Kligler, Lester J. Koch, New York City, of counsel.

Harold H. Boxer, New York City, for respondent.

McLEAN, District Judge.

This is a motion under the Arbitration Act (9 U.S.C. § 4) to compel arbitration of a controversy arising under a so-called dual rate contract between petitioners, the Far East Conference of shipping companies ("the Conference") and respondent, a shipper of textiles. Petitioners on May 28, 1963 filed in this court a petition for an order directing arbitration. A citation was issued and served upon respondent which described the proceeding as an action for breach of contract. Respondent filed a formal answer on July 16, 1963. Nothing of any importance occurred thereafter until June 12, 1964, when petitioners finally served the present notice of motion, which eventually came on for argument on August 18, 1964. Some of the relevant documents are attached to the original petition rather than to the moving papers. In deciding this motion, I have considered the allegations both of the petition and answer.

The relevant facts are undisputed and may be summarized as follows:

The Conference was established under an agreement which on November 14, 1922 was approved by the Federal Maritime Board under Section 15 of the Shipping Act of 1916 (46 U.S.C. § 814). On October 26, 1949 the Conference entered into the dual rate contract with respondent, under which respondent agreed, in consideration of receiving a lower rate, to ship on Conference vessels all shipments made by respondent from United States ports (other than Pacific Coast ports) to ports in the Philippines and other countries in the Far East. The contract provided that:

"If, at any time, the Shipper shall make any shipment or shipments in violation of any provisions of this Agreement, the Shipper shall pay liquidated damages to the Conference in lieu of actual damages which would be difficult or impracticable to determine. Such liquidated damages shall be paid in the amount of freight which the Shipper would have paid had such shipment or shipments moved via a Conference Carrier computed at the contract rate or rates currently in effect."

The contract contained the following arbitration clause:

"Any disputes between the parties hereto arising out of this Agreement or involving the interpretation or effect thereof, shall be referred to a board of three arbitrators, one of whom shall be appointed by the Shipper, the second of whom shall be appointed by the Carriers, and the third of whom shall be appointed by the two arbitrators appointed as aforesaid. The decision of any two of said arbitrators with respect to any matter submitted to them as aforesaid, including, but without limitation, the amount of

damages arising from any breach of this agreement, shall be final and binding upon the Shipper and the Carriers, and, for the purpose of enforcing any such award, the same shall be made a rule of this Court."

This dual rate contract was never filed with the Federal Maritime Board or its successor, the Federal Maritime Commission (the "Commission"), and thus was never approved or disapproved by the Commission.

In December 1961 respondent made a shipment of textiles from Charleston, South Carolina, to Manila, Philippine Islands, on a non-Conference carrier. Claiming that this was a breach of the dual rate contract, the Conference demanded arbitration on December 11, 1962. Respondent failed to appoint an arbitrator and in effect refused to arbitrate. Thereafter on May 28, 1963, the Conference filed its petition in this court.

The Arbitration Act covers arbitration under "a written provision in any maritime transaction or a contract evidencing a transaction involving commerce," as those terms are defined in the Arbitration Act (9 U.S.C. §§ 1, 2). It is clear that the present contract comes within the statute. Parsons & Whittemore, Inc. v. Rederiaktiebolaget N., 141 F.Supp. 220 (S.D.N.Y.1956).

The principal contention made by respondent in opposition to this motion is that the dual rate contract is illegal and void because it was never filed with and approved by the Commission as required by Section 15 of the Shipping Act (46 U.S.C. § 814). Before passing upon this contention, the court must first consider whether this question should be decided by the court upon this motion or whether it should be left to the arbitrators. Under the Arbitration Act, the only questions to be decided by the court on a motion to compel arbitration are (1) whether an agreement to arbitrate was made, and (2) whether respondent has failed to comply with it. 9 U.S.C. § 4.

Under certain circumstances, the arbitration clause contained in a contract can be separated from the rest of the contract and can be enforced by the court even though the validity of the contract as a whole has been challenged by the party who has refused to arbitrate. The leading case in this Circuit is Robert Lawrence Company, Inc. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir.1959), in which the Court of Appeals held that, even though respondent claimed that the contract which contained the arbitration clause was invalid because allegedly procured by fraud, an action for breach of contract should have been stayed and arbitration compelled, leaving it to the arbitrators to determine the issue of fraud.

In the later case of In re Kinoshita & Co., 287 F.2d 951 (2d Cir.1961), however, the Court of Appeals, although again holding that the arbitration clause was separable from the contract in which it was contained, decided that the language of the clause was not broad enough to empower the arbitrators to decide a claim of fraud in the inducement of the contract as a whole, and therefore held that the district court properly decided that question itself before directing arbitration.

Apropos of whether the arbitration clause is separable from the rest of the contract, the Court of Appeals in Kinoshita said:

"Accordingly, and following and further developing principles of federal law, as stated in Robert Lawrence Co. v. Devonshire Fabrics, Inc., and as applicable to maritime transactions and contracts involving commerce, we must first examine the record to ascertain whether there is any factual obstacle to considering the arbitration clause as separable, and whether the arbitration clause is sufficiently broad to cover the dispute about the alleged fraud. No such factual obstacle is found in this case as is evidenced by the agreement itself. There would be such an obstacle if it was claimed by appellant that appellant's signature to the contract was a forgery, or that

for any other valid reason there had at no time existed as between the parties any contractual relation whatever." (287 F.2d at 952).

■ In attempting to apply this statement of the rule to the present case, it could plausibly be argued that a contractual relationship between the parties did exist and that therefore the question of the illegality of the dual rate contract should not be decided by the court in the first instance, but should be left to the arbitrators, provided, however, that the arbitration clause is broad enough to empower the arbitrators to decide it. I do not believe that it is in this instance. The clause authorizes the arbitrators to decide "any disputes between the parties hereto arising out of this agreement involving the interpretation or effect thereof." This or substantially similar to the clause in Kinoshita which the Court of Appeals held did not authorize the arbitrators to decide a claim of fraud in the inducement of the contract. It would seem to follow that this language does not empower the arbitrators to decide a claim of illegality of the contract, a claim which could hardly be said to "arise out of" the contract or to involve its interpretation or effect. Hence, even if the arbitration clause is considered to be separable from the contract which contains it, it would appear to be the duty of the court to decide this claim of illegality upon this motion. If the arbitration clause is not separable, and therefore inevitably falls if the contract itself is void, then obviously the court must decide whether the contract is valid before it can decide whether to compel arbitration under it. Thus, whichever approach one takes, the same conclusion is reached in this instance, i. e., that the issue of illegality is to be decided by the court, not by the arbitrators. I turn, therefore, to the consideration of that question.

It seems clear beyond doubt that prior to May 19, 1958, a dual rate contract which was not filed with and approved by the Commission as required by Section 15 of the Shipping Act was invalid and unenforceable. River Plate & Brazil Conference v. Pressed Steel Car Co., 227 F.2d 60 (2d Cir.1955) is a square decision to that effect.

But after that decision was rendered in 1955, the situation changed radically. In 1958 the Supreme Court decided Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958) in which it held that under certain circumstances, having nothing to do with whether or not they were filed with and approved by the Commission, dual rate contracts were illegal because they violated Section 14 of the Shipping Act (46 U.S.C. § 812). Shortly thereafter, because of that decision, Congress on August 12, 1958 passed the "Moratorium Act" (Public Law 85–626, § 1, 72 Stat. 574), which amended Section 14 of the Shipping Act (46 U.S.C. § 812) as follows:

"That nothing in this section or elsewhere in this chapter, shall be construed or applied to forbid or make unlawful any dual rate contract arrangement in use by the members of a conference on May 19, 1958, which conference is organized under an agreement approved under section 814 of this title by the regulatory body administering this chapter, unless and until such regulatory body disapproves, cancels, or modifies such arrangement in accordance with the standards set forth in section 814 of this title." [1]

The Moratorium Act, as originally enacted, was to expire on June 30, 1960, but by subsequent amendments it was continued in effect until October 15, 1961. (Pub.L. 86–542, June 29, 1960, 74 Stat. 253; Pub.L. 87–75, June 30, 1961, 75 Stat. 195; Pub.L. 87–252, § 2, September 16, 1961, 75 Stat. 521) Before the final expiration date, Congress, on October 3, 1961, enacted Public Law

1. May 19, 1958 was the date of the decision in Federal Maritime Board v. Isbrandtsen Co., supra.

87–346, § 3 (75 Stat. 764) which provided:

"Notwithstanding the provisions of sections 14, 14b, and 15, Shipping Act, 1916, as amended by this Act, all existing agreements which are lawful under the Shipping Act, 1916, immediately prior to enactment of this Act, shall remain lawful unless disapproved, canceled, or modified by the Commission pursuant to the provisions of the Shipping Act, 1916, as amended by this Act: *Provided, however,* That all such existing agreements which are rendered unlawful by the provisions of such Act as hereby amended must be amended to comply with the provisions of such Act as hereby amended, and if such amendments are filed for approval within six months after the enactment of this Act, such agreements so amended shall be lawful for a further period of not to exceed one year after such filing.[2] Within such year the Commission shall approve, disapprove, cancel or modify all such agreements and amendments in accordance with the provisions of this Act."

At the same time, *i. e.*, October 3, 1961, Congress enacted Section 14b of the Shipping Act (46 U.S.C. § 813a). This section set forth certain provisions which dual rate contracts must thereafter contain before they would be eligible for approval by the Commission. One of these provisions has particular relevance here, a provision that the contract "covers only those goods of the contract shipper as to the shipment of which he has the legal right at the time of shipment to select the carrier." The contract with which we are concerned does not contain such a provision.

What is the bearing of these statutes upon the present case? As has been pointed out, this dual rate contract was invalid under the law as it existed up to May 19, 1958, because it had not been filed with and approved by the Commission. But the effect of the Moratorium Act was to make the dual rate contract lawful, as long as the Moratorium Act was in effect, even though it had previously been unlawful. This is apparent from the legislative history of the Moratorium Act,[3] and particularly from a letter addressed by the then Deputy Attorney General of the United States, Lawrence E. Walsh,[4] to the Chairman of the Committee on Merchant Marine and Fisheries of the House of Representatives, a letter which appears in the report of that Committee. The letter points out that the Moratorium Act "goes beyond merely restoring the situation as it existed prior to the Supreme Court decision" and that the Act would "validate any existing dual rate arrangement, whether or not it had been approved by the Board, unless and until the Board disapproves, cancels or modifies such arrangement." 1958 U.S.Code Cong. & Adm. News, pp. 3492–4, 85th Cong., 2d Sess. (1958).

It seems clear that Congress intended to permit the use of all dual rate contracts then "in use" whether approved by the Commission or not, until such time as Congress completed its study of the problem and was in a position to decide what amendments to the Shipping Act should be made in order to clarify the uncertainties created by the Supreme Court's decision in Isbrandtsen.

---

2. Amended by Pub.L. 88–5, April 3, 1963, 77 Stat. 5, to extend this period up to April 3, 1964. See 46 U.S.C. § 813a note.

3. S.Rep. No. 1709, 85th Cong., 2d Sess. (1958); H.R.Rep. No. 2055, 85th Cong., 2d Sess. (1958) (1958 U.S.Code Cong. & Adm.News, p. 3498); S.Rep. No. 860, 87th Cong., 1st Sess. (1961); H.R.Rep.

No. 498, 87th Cong., 1st Sess. (1961); Conf.Rep. No. 1247, 87th Cong., 1st Sess. (1961) (1961 U.S. Code Cong. & Adm. News, p. 3108); see generally Index to the Legislative History of the Steamship Conference Dual Rate Law (S.Doc. No. 100, 87th Cong., 2d Sess. 1962).

4. Formerly a judge of this court.

The dual rate contract with which we are here concerned, therefore, was valid at least as long as the Moratorium Act was in effect, *i. e.*, until October 15, 1961. By that time Congress had completed its study and had enacted the amendments which it considered necessary and desirable. By the Act of October 3, 1961, Congress declared that all dual rate contracts which were lawful "immediately prior" to October 3, 1961, should continue to be lawful until disapproved by the Commission, provided that if a dual rate contract did not contain the provisions which the Act of October 3, 1961 required it to contain, then it must be amended to include these provisions and must be filed for approval within six months, *i. e.*, before April 3, 1962. The dual rate contract here involved, having become lawful on May 19, 1958 and not having been disapproved by the Commission thereafter, was valid "immediately prior" to October 3, 1961, and although it did not contain the provisions which that act required, it continued to be valid, even though not amended or filed for approval, at least until April 3, 1962.

The alleged breach of the contract which gives rise to the present demand for arbitration occurred in December 1961. The contract was lawful and valid at the time the breach occurred and the claim arose. For some reason which does not appear, the Conference did not avail itself of the opportunity offered by the Act of October 3, 1961. It did not amend the contract to insert the provisions required by the Act. It did not file the contract with the Commission for approval. The contract thus became unlawful on April 3, 1962, when the deadline set by Congress for the filing of amended contracts expired. Petitioners did not demand arbitration until December 11, 1962 and did not attempt to enforce their demand until May 28, 1963. The ultimate question here, therefore, is whether this court may require arbitration under an arbitration clause contained in a contract which was valid at the time of the breach which gives rise to the claim for arbitration but which became invalid subsequent to the breach and prior to the time that arbitration was demanded.

■ No case in point has been discovered. A possible analogy may be found in the statutory rule that the repeal of a statute, or the expiration of a temporary statute, does not, unless the statute expressly provides otherwise, extinguish any liability which was incurred while the statute was in effect. 1 U.S.C. § 109. See Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954).

■ So here, the expiration of the period during which this contract was valid under the Moratorium Act, should not prevent the subsequent enforcement of an obligation which arose during that period of validity. There is nothing in the Moratorium Act or the Act of October 3, 1961 to indicate that Congress had any contrary intent. The situation here is not unlike the more usual case of a contract which has expired by its terms before arbitration is demanded. In that situation arbitration of a controversy which arose prior to the expiration of the contract will be enforced after expiration. In re Potoker, 286 App.Div. 733, 146 N.Y.S.2d 616, aff'd sub nom Potoker v. Brooklyn Eagle, Inc., 2 N.Y.2d 553, 161 N.Y.S.2d 609, 141 N.E.2d 841, (1957), cert. denied, 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113 (1957).

■ I conclude, therefore, that the fact that this dual rate contract was not filed with the Commission does not prevent enforcement of the arbitration clause.

■ Respondent also contends that, under its contract with the Philippine purchaser of the textiles, the purchaser had the legal right to select the carrier. This contention relates to the requirement of the Act of October 3, 1961, which I have previously noted, *i. e.*, that dual rate contracts should be amended not later than April 3, 1962 to include a clause to the effect that the contract covers only those goods as to which the shipper has the legal right to select the car-

rier. As I have pointed out, this contract did not contain that clause and it was never amended to include it. Whether, under these circumstances, respondent's contention, even if factually true, constitutes any defense to petitioners' claim, is a question which goes to the merits of the claim and is therefore a question to be decided by the arbitrators.

Finally, respondent claims that petitioners are barred by laches from proceeding with arbitration. Some delay has occurred, it is true, but respondent makes no showing that it has been prejudiced in any way thereby. The claim of laches is without merit. Reconstruction Finance Corp. v. Harrisons & Crosfield, 204 F.2d 366, 37 A.L.R.2d 1117 (2d Cir.1953).

The motion to compel arbitration is granted. Respondent will be given an opportunity to select an arbitrator, in accordance with the contract. If it fails to do so, the arbitrator will be appointed by the court.

Settle order on notice.