See also 28 F.R.D. 346.

**Olga ZDANOK et al., Plaintiffs,**

v.

**The GLIDDEN COMPANY, DURKEE FAMOUS FOODS DIVISION, Defendant.**

**Frank T. ALEXANDER et al., Plaintiffs,**

v.

**The GLIDDEN COMPANY, DURKEE FAMOUS FOODS DIVISION, Defendant.**

United States District Court
S. D. New York.
April 4, 1963.

Sahn, Shapiro & Epstein, New York City, for plaintiffs, Morris Shapiro and Harry Katz, New York City, of counsel.

White & Case, New York City, for defendant, Chester Bordeau and Charles F. G. Raikes, New York City, Jones, Day, Cockley & Reavis, Frank C. Heath, Cleveland, Ohio, of counsel.

PALMIERI, District Judge.

This is the second time Zdanok v. Glidden has been before this Court. It is here again after a considerable appellate history.[1] The issues themselves are of far-reaching significance in the field of labor law. They relate to the interpretation of a collective bargaining agreement dated March 13, 1956 that covered defendant's employees at Elmhurst, Long Island.

In 1957, and as the result of a bona fide business decision, defendant transferred its Elmhurst operations to Bethlehem, Pa., closing the Elmhurst plant. Defendant offered to give fair consideration to applications of its Elmhurst employees for employment at Bethlehem, but only with the status of new employees. Plaintiffs in these actions are the individual members of the union who have contended that the collective bargaining agreement obligated defendant to employ them at Bethlehem without loss of seniority, pension, welfare, and other rights.

At the original trial of the Zdanok case in 1960, this Court dismissed the complaint and entered judgment for defendant. 185 F.Supp. 441 (S.D.N.Y. 1960). The Court of Appeals reversed this decision, 288 F.2d 99 (2d Cir.1961), holding that the employees had certain vested rights under the contract that were not subject to termination by relocation of the Elmhurst plant in another state.[2] Although the case then went before the Supreme Court on certiorari, the sole issue accepted by that Court for review was whether the presence of a Court of Claims judge on the Court of Appeals panel invalidated the decision.[3] The Supreme Court's subsequent decision confirming the validity of the judge's participation [4] left undisturbed the Second Circuit's resolution of the merits in favor of plaintiffs.[5]

1. See notes 2–5 infra, and accompanying text.

2. Petitions for rehearing and rehearing en banc were denied. D.C. 288 F.2d 99.

3. 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1961).

4. 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962).

5. See also 371 U.S. 854, 83 S.Ct. 14, 9 L.Ed.2d 93 (denial by the Supreme Court of defendant's attempt to have that Court

■ Upon remand of the Zdanok case, it was consolidated with Alexander v. Glidden, which is identical with Zdanok except that other employees are plaintiffs. Another trial was held on the liability issue, so that the parties have had a full opportunity to bring to the Court's attention any proof bearing upon the interpretation of the contract. Defendant has again moved to dismiss. The first ground for this motion is that recent decisions have demonstrated error in the earlier Zdanok opinion in the Court of Appeals. Defendant's argument is, in substance, that the Court of Appeals based its interpretation of the contract on state rather than federal law.[6] The Supreme Court has since made it clear that when suit is brought by individual employees for violation of a collective bargaining agreement, federal rather than state law must be applied.[7] Defendant claims that under federal law, seniority and other rights cannot be held to have survived the good faith closing of the Elmhurst plant.

■ However, the Supreme Court's holding in Smith v. Evening News Ass'n that federal law must be applied to employee actions on collective bargaining agreements did not terminate the possible relevance of any decision not expressly decided as a matter of federal law. Indeed, as pointed out in Textile Workers v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957):

"* * * state law, if compatible with the purpose of § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185], may be resorted to in order to find the rule that will best effectuate the federal policy."

So here, unless later controlling authorities had made it clear that the Zdanok decision must remain outside the scope of federal law, this Court would not be free to disregard the earlier Court of Appeals' determination.[8]

In Proctor & Gamble Independent Union v. Proctor & Gamble Mfg. Co., 312 F.2d 181 (2d Cir.1962), the Court of Appeals intimated that it might on a proper occasion undertake to reexamine the principles on which the Zdanok case was based. It was also pointed out that:

"Zdanok cannot properly be read to govern situations which are not strictly within the facts there presented. More particularly the case cannot be made to stand in any general way for the survival of contractual obligations during any period beyond the period for which they were expressly undertaken." 312 F. 2d (at 186).

The Court, however, only limited Zdanok. It did not disavow the decision. And it stated that the principle of Zdanok, that rights under a labor agreement might be prospective in character, was applicable to arbitration in the sense that "Grievances * * * based upon conditions arising *during the term of the agreement to arbitrate* are arbitrable after that term has ended."[9]

In another recent decision, Livingston v. John Wiley & Sons, 313 F.2d 52 (2d Cir.1962), the Court of Appeals indicated that it did not consider Zdanok inapposite as a source of federal law. The issue in Livingston was whether rights

give untimely reconsideration to the original denial of certiorari on the merits).

6. See Glidden Co. v. Zdanok, 370 U.S. 530, 537, 82 S.Ct. 1459, 1465, 8 L.Ed.2d 671 :
"The Court of Appeals for the Second Circuit sat to determine a question of state contract law presented for its decision solely by reason of the diverse citizenship of the litigants."

7. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). See also Black Clawson Co. v. Int'l Ass'n

of Machinists, 313 F.2d 179, 184 (2d Cir. 1962). The Glidden Company at all material times was an industry affecting interstate commerce within the meaning of Section 301(a) of the Labor Management Relations Act.

8. And perhaps not even then. See Higgins v. California Prune & Apricot Growers, 3 F.2d 896 (2d Cir. 1924).

9. 312 F.2d 181, at 186 (emphasis in the Court of Appeals' opinion).

under a collective bargaining agreement could survive consolidation of the employer corporation with another company, at least insofar as a motion to compel arbitration under the agreement was concerned. In holding that the union could compel arbitration of its claim that seniority, job security, grievance procedure, vacation and severance pay, and certain pension rights were "vested," the Court specifically referred to Zdanok as one case in which the possibility of "vested" rights had been recognized. The Court also cited several other cases decided on the basis of state law [10] without suggesting that their applicability was diminished because federal law governed the claim before it. Moreover, and perhaps just as important, the Court described Oddie v. Ross Gear & Tool Co., 305 F.2d 143 (6th Cir.), cert. denied, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962), the principal case claimed to support defendant's position, as a decision that recognizes that "the matter is solely one of the 'construction of the agreement.'"

It is evident from these decisions that Zdanok v. Glidden retains validity in the Second Circuit, although of somewhat diminished proportions, and that defendant's motion to dismiss based on error in that decision must be denied.

Defendant urges, in the second instance, that irrespective of what the Court of Appeals held in the Zdanok case with the record that was before it, the evidence adduced at this second trial demonstrates that the contracting parties did not intend that seniority and other rights should survive the closing of the Elmhurst plant. During the second trial many aspects of the labor relations history of the Glidden Company Elmhurst plant were explored. A for-

mer official of defendant, who had negotiated the contract in suit, testified that during the negotiations the company indicated to the union that it might have to close the Elmhurst plant. The union then made a demand for a severance pay program, which the company refused. The witness stated that no discussions occurred during the negotiations with respect to the transfer of employees from the Elmhurst plant to any other plant where the Elmhurst operations might be carried on.

This official, and another who had participated in meetings with the union in the period immediately preceding the closing of the plant, also testified that the union representatives conceded at such meetings that the contract placed no obligations on the company in respect to an offer of employment at Bethlehem. As one of the witnesses stated:

"Mr. Hoppman [the union's lawyer] also brought up this question of seniority and requested we grant some seniority or preference to employees who might go to Bethlehem. He did not indicate there was any claim under the contract; in fact, he said there wasn't, as Mr. Crotty [the union representative] also told me that there was nothing under the contract that would require us to do it, but he thought we ought to give some consideration to the people who went to Bethlehem." (Transcript 95–96).

The testimony of the other witness was to the same effect; that the union attempted to convince the company that it ought to give seniority or other preference to transferring employees, but this was in the nature of a request rather than something to which the union

10. Botany Mills, Inc. v. Textile Workers, 50 N.J.Super. 18, 141 A.2d 107 (App. Div.1958); In re Potoker, 286 App.Div. 733, 146 N.Y.S.2d 616 (1st Dep't 1955), aff'd sub nom. Potoker v. Brooklyn Eagle, Inc., 2 N.Y.2d 553, 161 N.Y.S.2d 609, 141 N.E.2d 841 (1957); New York City Om-

nibus Corp. v. Quill, 189 Misc. 892, 73 N.Y.S.2d 289 (Sup.Ct.), modified on other grounds, 272 App.Div. 1015, 74 N.Y.S.2d 925 (1st Dep't 1947), aff'd, 297 N.Y. 832, 78 N.E.2d 859 (1948); Roddy v. Valentine, 268 N.Y. 228, 197 N.E. 260 (1935).

claimed to be entitled under the contract.[11]

It is true that in October of 1957 the union served a notice of intention to arbitrate its dispute with the Glidden Company, and that Issue 4 of this notice was:

"Whether the collective bargaining agreement is being breached by the Employer in the removal of its plant from the City of New York and by failing to offer each employee continued employment with full seniority." [12]

The same issue was included in the further legal proceedings that eventually resulted in the decision that the company had no obligation to arbitrate with respect to the issues raised by the union.[13] However, it does not appear that the union made the claim prior to its being raised in the context of arbitration. The union officials who were familiar with the contract and who participated in meetings with the company, were not called to testify, and it seems reasonable to infer that they would not have challenged the testimony of defendant's witnesses. Thus, defendant's evidence stands uncontradicted that through the middle of September, at the various meetings between the company and the union, the union agreed with the company's assertion that the employees had no rights under the contract to re-employment at Bethlehem with seniority.

On the evidence that was adduced before it, this Court finds that the parties entertained no expectation that the employees' rights would survive the removal of the Elmhurst plant to another state. The testimony of defendant's witnesses with respect to the bargaining that preceded the contract, the conduct of the parties during its term, and negotiations at the meetings prior to the closing of the plant stand uncontradicted and in opposition to plaintiffs' interpretation of the contract.

■ The Court of Appeals, however, has taken a different view on the basis of the contract itself and the implications to be drawn from its terms. This Court considers itself bound by the Court of Appeals' interpretation notwithstanding the import of the evidence referred to. Accordingly, defendant's motion to dismiss, insofar as it is based on the evidence introduced at the second trial, must be denied.

One final contention of defendant is that plaintiffs cannot prevail on the "liability" issue unless they first demonstrate that they were ready, willing and able to go to Bethlehem. Plaintiffs contend that this issue relates only to the amount of damages.

The difference between the parties on this issue is more imaginary than real. A plaintiff who cannot show that he would have transferred to Bethlehem suffered no damages from defendant's breach and would, at most, be entitled to nominal damages. On the other hand, since the proof on this issue will differ with each plaintiff, administration of these cases can be facilitated if this question is determined in the context of ascertaining the result of defendant's

11. Defendant also demonstrated that when the refinery operations were transferred to Louisville, Kentucky, in 1956, the union made no claim to severance pay or to transfer of employees to Louisville. It should be noted, however, that since there was plant-wide seniority, most of the employees in the refinery division were able to remain in the Elmhurst plant by "bumping" employees in other divisions.

12. This notice was preceded in September by a letter of the union advising the New York State Board of Mediation that it wished to submit for arbitration "the refusal of the company to offer to its present employees employment at its new plant." The company's reply, dated September 18, 1957, states that the company had never refused to offer its Elmhurst employees work at Bethlehem, and would give fair consideration to any such application. The company also took the position that transfer of the employees was not within the specific terms of the agreement and hence was not arbitrable.

13. Matter of Gen'l Warehousemen's Union, 10 Misc.2d 700, 172 N.Y.S.2d 678 (1958).

breach of the agreement with respect to each individual plaintiff.

 The issue of plaintiffs being ready, willing and able to go to Bethlehem, then, will be tried as part of the damage proceedings. The burden of proof on this issue will rest on plaintiffs, subject to the admonition in the Court of Appeals' opinion in the Zdanok case that:

> "Proof [on this issue] may well fall short of complete conviction, but the trier of fact will not penalize the plaintiffs on account of the uncertainty which has been caused by the defendant's conduct." [14]

There remains to be discussed the question of an interlocutory appeal. During the course of one of the many conferences between the Court and counsel, devoted to the exploration of ways of properly administering this multifaceted litigation, defendant expressed its desire to take an immediate appeal from an adverse ruling on the question of liability. Plaintiffs' counsel indicated that he would not oppose such an appeal. The criteria governing the Court's decision on this request are to be found in 28 U.S.C. § 1292(b):

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of

the litigation, he shall so state in writing in such order."

First, there is here a controlling question of law. That question is whether as a matter of federal law that must now be applied to interpret the contract, plaintiffs' rights survived the closing of the Elmhurst plant. It is, of course, true that this question relates to the intentions of the parties, and hence contains certain "factual" elements not present in other more abstract questions of law. However, in this case intent turns primarily on the interpretation of the provisions of the written contract, and the inferences arising therefrom. In this context, the Court of Appeals will not merely be deciding whether this Court's determination of factual evidence was clearly erroneous, a situation that would cause far greater hesitancy in the certification of an interlocutory appeal.

The second requirement is that there be substantial ground for difference of opinion with respect to the controlling question of law. In this respect note may again be taken of Judge Hays' comments on the Zdanok case in Proctor & Gamble Independent Union v. Proctor & Gamble Mfg. Co., supra, and of Oddie v. Ross Gear & Tool Co., supra, that as a matter of federal law expressly refused to recognize contentions similar to plaintiffs'. Chief Judge Lumbard, in dissent in the earlier Zdanok case, also squarely relying on federal law, stated his belief that plaintiffs' rights could not survive the good faith closing of the Elmhurst plant.[15] These decisions indicate that the requirement as to a substantial ground for difference of opinion has been satisfied.[16]

---

14. 288 F.2d 99, at 104.

15. The examination of federal law at the close of the first trial led this Court also to conclude that plaintiffs had no cause of action. 185 F.Supp. 441, at 442. See also Local Lodge 2040 v. Servel, Inc., 268 F.2d 692 (7th Cir.), cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959).

16. See generally, Aaron, Reflections on the Legal Nature and Enforceability of Sen-

iority Rights, 75 Harv.L.Rev. 1532 (1962); Lowden, Survival of Seniority Rights Under Collective Agreements; Zdanok v. Glidden Co., 48 Va.L.Rev. 291 (1962); 110 U.Pa.L.Rev. 458 (1962); 61 Colum.L.Rev. 1363 (1961). See also Atlantic City Elec. Co. v. Gen. Elec. Co., 207 F.Supp. 613, 619–620 (S.D.N.Y. 1962) ("a narrow approach is not justified" in determining whether the substantial difference of opinion requirement has been satisfied, when strong rea-

Finally, as to the third requirement of a material advance in the ultimate termination of the litigation, this is clearly met, since defendant's contention goes directly to the merits,[17] and, if correct, will conclude this litigation without the further extended proceedings now in prospect with respect to the damage issue.

 In view of the rather strict criteria that quite properly surround the interlocutory appeal section in an effort to prevent its use to erode the final judgment rule, it may be well to indicate in greater detail some of the factors that have impelled this Court to authorize an interlocutory appeal. There are in the two consolidated cases a total of 162 plaintiffs. Most, if not all, are working people who are dispersed and who would be unable to attend a prolonged trial without serious inconvenience. As to each there remains a full-fledged hearing on the damage question. Inquiry must be made into the available jobs at Bethlehem and the plaintiffs, perhaps all, who would have filled them. Each plaintiff will have to prove that he was ready, willing and able to go to Bethlehem, and must establish the particular seniority, pension, welfare, and group insurance benefits to which he was entitled and of which he claims deprivation by defendant's failure to recognize vested seniority rights at the Bethlehem plant. 288 F.2d 99, at 104. Earnings since 1957, and other factors will also have to be explored on the question of mitigation of damages. This will necessitate examination not only of the plaintiffs involved, but of other witnesses who have knowledge of the relevant facts. In effect, 162 separate trials must be had, with a great expenditure of time, money, and effort by the parties and the corresponding utilization of court facilities.[18] It might also be mentioned that in spite of contrary allusions in some of the papers, it is not feasible to refer this matter to a master for any purpose as there would be no way to meet the costs in the event of a conclusion adverse to the plaintiffs. There is now every indication that plaintiffs will insist that all of the damage claims be tried to a jury. More than this, the Court as well as the parties have exhausted every present means for the stipulation and admission of facts; and what has been said concerning the burdens of a prospective trial assumes that no further efforts can reasonably be made in this direction.

This Court also believes that this case is in an appropriate posture for appellate review. Unlike those instances in which certification of an interlocutory appeal has been questioned,[19] this case is not in a pleading or preliminary stage. Liability has been determined after a full hearing. What remains is the issue of damages. Should the Court of Appeals rule against plaintiffs, the litigation will be finally concluded. Plaintiffs will not be free to amend the complaint, and thus get a further trial. If the court rules in favor of plaintiffs, the possibility that the case will again come before the Court of Appeals from determinations as to damages, although not foreclosed, will be substantially lessened. And, more importantly, the interlocutory appeal will have avoided a considerable hardship to the parties, particularly the plaintiffs, as well as a heavy preemption of judicial service and court facilities for what can be described as a series of

sons exist for the conclusive and expeditious determination of an issue by interlocutory appeal).

17. These facts distinguish this case from Atlantic City Elec. Co. v. A. B. Chance Co., 313 F.2d 431 (2d Cir. 1963), in which the Court of Appeals refused to permit interlocutory appellate review of a discretionary discovery order.

18. Plaintiffs' counsel has tentatively estimated that trial time alone will amount to well over 300 hours. Defendant considers this estimate optimistic.

19. See Gottesman v. Gen. Motors Corp., 268 F.2d 194 (2d Cir. 1959); Brown v. Bullock, 294 F.2d 415, 422 (2d Cir. 1961) (concurring opinion of Clark, J.); Atlantic City Elec. Co. v. A. B. Chance Co., supra.

related trials that may ultimately prove to have been unnecessary.[20]

An interlocutory judgment in favor of plaintiffs is filed herewith. The judgment contains a certification for an interlocutory appeal on the question of defendant's liability.

---

20. See Gottesman v. Gen. Motors Corp., supra, 268 F.2d at 198–199 (dissenting opinion of Moore, J.). In connection with his comment on the applicability of the interlocutory appeals section to cases in which "a long trial would be necessary for the determination of liability or damages upon a decision overruling a defense going to the right to maintain the action," Judge Moore pointed out:

"Certainly it will be too late so far as time and expense are concerned at the end of any hearing on the merits to determine that the plaintiffs had no right to bring this action."