**SPERRY INTERNATIONAL TRADE, INC., Petitioner,**

v.

**GOVERNMENT OF ISRAEL, Respondent.**

**No. 81 Civ. 5670(MP).**

United States District Court, S.D. New York.

March 1, 1985.

See also, 670 F.2d 8 and 689 F.2d 301.

Holtzmann, Wise & Shepard by Norman Solovay, David R. Foley, Mark Moore, New York City, for petitioner.

Finley, Kumble, Wagner, Heine, Underberg & Casey by Jeffrey Fillman, David C. Burger, New York City, for respondent.

## DECISION AND OPINION

MILTON POLLACK, Senior District Judge.

The petitioner, Sperry International, Inc. ("Sperry"), moves to vacate an Award rendered in favor of respondent, Government of Israel, by arbitrators appointed by the American Arbitration Association ("AAA"), on the grounds that the Award allegedly resulted from arbitrator misconduct and/or was so imperfectly executed as to be invalid; or alternatively for an order modifying or correcting the Award to show that it was not unanimous. In furtherance of either alternative, Sperry seeks an order permitting it to take oral depositions of the arbitrators, all of whom signed the Award.

The respondent has moved for an order confirming the Award and opposes petitioner's motion and seeks an award of attorney's fees and costs.

For the reasons shown hereafter, the respondent's motion to confirm the Award will be granted and the petitioner's motions will be denied.

The arbitration arose out of a contract dispute between Sperry and the Government of Israel. The contract required Sperry, together with its subcontractors and with the cooperation of the Government of Israel, to furnish a modern ground-to-ground communications system for the Israeli Air Force.

After a dispute concerning Sperry's contractual performance arose, Sperry sought and obtained an order from this Court directing arbitration to be held in New York under the Rules of the AAA. Thereafter, the matter was duly submitted to a panel of three neutral arbitrators selected by the Association: Two Canadians with construction contract backgrounds and the New York resident partner of a firm of English solicitors, the latter becoming the Chairman.

The evidentiary hearings, which consumed 212 hearing days, produced over 40,000 pages of transcript. Lengthy post-hearing briefs were submitted by each side. Four days of final oral arguments by coun-

sel followed. On December 12, 1984, a written Award, signed by each of the three arbitrators, was rendered. The Award is complete in all respects and conforms to the Rules of the AAA. It calls for Sperry to pay the Government of Israel $16,413,-000 in United States currency with interest at twelve percent until paid. The Award also prescribes the terms for the release of an escrow account which previously had been established by the parties. The Award further provides for Sperry to deliver to Israel certain so called "protected material" which had been delivered by Israel to Sperry, or failing such re-delivery, for Sperry to destroy the material. The Award requires Sperry to bear certain bank charges; the parties to pay equally the AAA administrative fees, charges, and expenses, and the arbitrators' and reporting agency's compensation and expenses; and, each party to bear its own attorney's fees and costs and those expenses of and incidental to the arbitration.

The Award states "this Order and Award is in full and final settlement of all claims and counterclaims submitted in this arbitration." The Award is then signed manually by each of the three arbitrators and each acknowledged to a Notary Public that he executed the same.

*Criticisms of the Award*

Shortly after the Award was rendered, an attorney for Sperry phoned one of the arbitrators and reportedly told him that the outcome was totally unexpected and a complete shock to Sperry. Since no reasons were expressed in the Award, the attorney asked the arbitrator for any "expression" he felt he could make. The arbitrator declined to discuss the matter on the telephone, so the attorney suggested that they meet. The arbitrator responded that he wanted first to consult a legal advisor to an arbitration association in Canada of which he was a member. Ultimately, the arbitrator declined to meet Sperry's attorney.

During the course of their talk, when the Sperry attorney mentioned to the arbitrator that the decision was unanimous, he was allegedly corrected by the arbitrator;

the arbitrator stated that the Award was not unanimous since it did not so state expressly. In any event, neither a provision of the agreement to arbitrate nor any rule of the AAA required the arbitrators to render a unanimous award. Rule 28 of the AAA provides:

"Whenever there is more than one Arbitrator, all decisions of the Arbitrators must be by at least a majority. The Award must also be made by at least a majority unless the concurrence of all is expressly required by the Arbitration Agreement or by Law."

A few days after the talk with the arbitrator mentioned above, the same Sperry attorney unexpectedly encountered the Chairman of the Arbitration Panel and reiterated that Sperry was interested in gaining an insight into how the Award was to be interpreted and what lessons were to be drawn from it. The Chairman allegedly replied that there "may be a way" but that this would have to be taken up through the AAA. The AAA Tribunal Administrator later told Sperry's attorney that, after the time for challenging the award had expired, the AAA would likely make available to the parties certain notes made by the arbitrators during the course of the hearings.

On January 9, 1985, pursuant to an agreement by which Sperry retained its right to challenge the Award in court, Sperry paid the money awarded to the Government of Israel and the escrow account was distributed.

Briefly, Sperry argues that the Panel was dominated by its chairman who "may have advised the arbitrators erroneously" on various matters. Sperry says that the arbitrators' alleged failure to reflect their actual vote "is a defect which goes to the very heart of the award." Indeed, Sperry poses the hypothesis that if the Panel had actually been required to issue a divided award it might have reached a compromise award or even have realized that the majority's decision was faulty. Consequently, Sperry wishes to depose the arbitrators only in order to determine whether miscon-

duct occurred. Its hope is to ascertain whether the two arbitrators were deprived of their independence by the Chairman.

Sperry makes the further claim that it is possible that the Chairman consulted a former New York judge concerning applicable New York law. There is not a scintilla of objective evidence showing that the Chairman ever actually consulted anyone.

Finally, Sperry has learned that one of the arbitrators took a vacation in Israel during the hearings. The petitioner's papers then speculate that, during his holiday, the visitor might have met some Israeli officials and/or viewed sites involved in the project under contract. Again there are no evidentiary facts or objective evidence to give any body to these musings, let alone any evidence of misconduct or improper access to the arbitrator. Indeed, Sperry's lawyer tells us in his affidavit: "No charges of 'misconduct' are in fact yet being made as to such events, but they can and should be inquired into further in the requested depositions."

In short, the record is bare of any evidentiary facts or objective basis creating a reasonable belief that misconduct has occurred or that any one of the arbitrators sacrificed his independence in any degree.

■ Neither the law of arbitration nor the Rules of the AAA require the arbitrators to give reasons for their conclusions or express anything other than their signature to an award. *See Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir.1972). None of the grounds enumerated in 9 U.S.C. §§ 10 or 11 for vacating the Award exist; there is no evidence of any prejudicial misconduct on the part of any arbitrator.

■ The law is well settled that a court may not review any of the findings of fact or applications of law by the arbitrators. An arbitrator's conclusions involve matters of judgment, and it would be contrary to the intent of an arbitration agreement for a court to interfere; the parties, by agreeing to an arbitration, did not intend the court's determination to replace that made by the arbitrators. Consequently, in post-award proceedings an arbitrator cannot "be examined for the purpose of impeaching his award," *Brownko International, Inc. v. Ogden*, 585 F.Supp. 1432, 1435 (S.D.N.Y.1983), or be impeached by his voluntary statements. *See Big-W Construction Corp. v. Horowitz*, 24 Misc.2d 145, 155–56, 192 N.Y.S.2d 721, 733–34, *aff'd*, 14 A.D.2d 817, 218 N.Y.S.2d 530 (N.Y.App.Div.1961). *See also Gramling v. Food Machinery and Chemical Corp.*, 151 F.Supp. 853, 860 (W.D.S.C.1957).

"As a quasi-judicial officer, an arbitrator should not be called upon to give reasons for his decision." *Lief v. Brodsky*, 126 N.Y.S.2d 657, 658 (N.Y.Sup.Ct.1953). "Inquisition of arbitrators for the purpose of determining the processes by which they arrived at an award, finds no sanction in law." *Reichman v. Creative Real Estate Consultants, Inc.*, 476 F.Supp. 1276, 1286 (S.D.N.Y.1979), *quoting, Martin Weiner Co. v. Fred Freund Co.*, 2 A.D.2d 341, 342, 155 N.Y.S.2d 802, 805 (N.Y.App.Div.1956), *aff'd*, 3 N.Y.2d 806, 166 N.Y.S.2d 7, 144 N.E.2d 647 (N.Y.1957).

■ For like reasons an arbitrator may not testify as to the meaning or construction of his written award. *See New York City Omnibus Corp. v. Quill*, 189 Misc. 892, 73 N.Y.S.2d 289, *aff'd*, 272 A.D. 1015, 74 N.Y.S.2d 925, *aff'd*, 297 N.Y. 832, 78 N.E.2d 859 (N.Y.1948). Any other view would make arbitration not the end, but only one step in the progress of litigation. *See generally* Domke, *The Law and Practice of Commercial Arbitration*, Chpt. 33 (1968).

■ The Second Circuit has held that, as an absolute prerequisite to any questioning of arbitrators, the petitioning party must present *"clear evidence* of impropriety." *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir.1978) (emphasis added). *See also DeFrayne v. Miller Brewing Co.*, 444 F.Supp. 130 (E.D.Mich.1978). Here, there is no such evidence; indeed the petitioner admits as much in the speculation and hy-

**1444**

pothesis it presents. It would be a disservice to arbitration to impair the finality of such proceedings by speculation on the decisional process.

At the hearing of this petition, the Court asked Sperry's counsel what questions he would want to ask the arbitrators. Counsel responded that "we would want to start with Mr. Dinkla and assure him he was not going to be sued and would not have to give back his fees and that Sperry would indemnify him if that were at issue, and then we would want to ask him: 'What was it Mr. Pettit was telling you about the law, if anything?'"

After counsel expressed this notion, the Court asked him, "Would you like to have the opportunity to submit to me a set of questions that you would like to ask this man?" Counsel replied that he would very much like to do that. Accordingly, counsel for Sperry submitted proposed questions for the arbitrators together with a proposed letter of explanation to be sent to them by the Court. Counsel further stated, "Sperry feels strongly that no useful purpose would be served by obtaining written in place of oral answers to the enclosed questions."

An examination of the suggested questions to the arbitrators leaves no doubt that the whole procedure suggested by Sperry would be entirely improper and destructive of the arbitral process. A copy of the proposed questionnaire has been placed in the file. It is self evident that the subjects dealt with by the proposed questions do not provide any basis for challenging or vacating the Award under 9 U.S.C. §§ 10 and 11.

The petition to vacate the Award is virtually frivolous and is in all respects denied. The Award is confirmed.

SO ORDERED.